**BOH v. PAN–AMERICAN PETROLEUM CORPORATION.**

**No. 410.**

District Court, E. D. Louisiana,
New Orleans Division.

March 24, 1941.

Charles F. Fletchinger, of New Orleans, La., for plaintiff.

Cobb & Saunders and Charles D. Marshall, all of New Orleans, La., for defendant.

BORAH, District Judge.

Alleging that the defendant, his lessee, was conducting on the leased premises the business of commercial advertising in violation of the agreement of lease, plaintiff, Arthur P. Boh, filed this suit in the Civil District Court for the Parish of Orleans to restrain Pan-American Petroleum Corporation from using the frames erected on the leased premises for commercial advertising purposes and to require the defendant to remove said frames. The defendant removed the controversy to this court on the ground of diversity of citizenship. Thereafter, and in due course, the cause came on for hearing on plaintiff's motion for an interlocutory injunction, whereupon it was stipulated that the court should disregard plaintiff's application for an interlocutory injunction and should consider the evidence then adduced in open court for all purposes as though taken on the trial of the merits. Briefly stated, the facts are these:

Findings of Fact.

1. On November 2, 1939, plaintiff and defendant entered into an agreement of lease covering certain premises owned by plaintiff at the intersection of Poydras Street and South Claiborne Avenue in the city of New Orleans, Louisiana.

2. When the premises were leased to defendant an advertising sign controlled by General Outdoor Advertising Company, Inc., was situated on the property.

3. The lease in controversy contains no provision restricting the lessee's right to use the premises in any manner it so de-

sired. The lease (Paragraph 7) merely grants to defendant "the privilege of using said premises for the purpose of operating thereon a gasoline service station and for the sale of tires, tubes, batteries and automobile accessories, and any other incidental commercial activity" and the option to cancel the lease if the use of the premises for any of such purposes be prevented by law.

4. Under the agreement of lease (Paragraph 7) the defendant agreed to raze the then existing improvements, consisting of a service station and a small cottage, and "to erect upon the described premises, at its own expense, a gasoline service station of the design known as Lessee's Type No. 22, with all necessary driveways and appurtenances, and to install such equipment as may be necessary or desirable for the proper use of said premises for the aforesaid purposes".

5. It was stipulated in Paragraph 11 of the lease that, "Lessee shall have the right to sublet the premises, or any portion thereof, or to assign this lease, but such subletting or assignment shall not relieve the Lessee of the covenant to pay rent, or to permit the use of the premises for other purposes than herein indicated".

6. In June, 1940, which was shortly after the filling station was completed and put into operation, the defendant erected as part of the improvements latticed screens or fences approximately twelve feet high, on top of which were superimposed billboards twelve or fifteen feet high.

7. Plaintiff was a frequent visitor to the premises and saw the billboards being constructed on the latticed screens but not knowing whether the billboards would be used for advertising defendant's products or for advertising something else interposed no objection or protest until he learned that the billboards would be used for advertising products other than Pan-American products.

8. Defendant has a contract with the General Outdoor Advertising Company and is receiving $60 per month for the privilege of using the billboards.

9. Plaintiff did not reserve any advertising rights in the lease nor did he stipulate that the defendant could not use the premises for advertising purposes.

10. Plaintiff is the owner of the property fronting on Poydras Street which adjoins the leased premises. The improvements on plaintiff's adjoining premises consist of an old double cottage, the roof of which has been let for commercial advertising to the same General Outdoor Advertising Company at a rental of $17.50 per year, which lease does not expire until July, 1943.

## Discussion.

The written pleadings on file show that plaintiff is seeking injunctive relief on the sole ground that the defendant is using the premises for commercial advertising purposes contrary to the lease agreement. At the trial numerous photographs were offered in evidence by plaintiff and defendant showing the physical layout of the leased premises and the structures of which the plaintiff complains. Plaintiff also testified without objection to the effect that the billboards obscured a part of his adjoining property, the roof, and made it very dark. At the conclusion of the taking of testimony plaintiff was allowed over objection to amend his petition "in such wise as to allege that the construction and maintenance of the objectionable billboards tends to obscure light, air and other valuable rights respecting the plaintiff's ownership of the adjoining property." In his motion for leave to amend and following in sequence the above-quoted language, counsel for plaintiff correctly stated, "that the evidence disclosed that the plaintiff had contemplated tearing down the shanty next door and using the vacant lot for commercial advertising purposes, provided the defendant was required to remove the objectionable billboards".

Assuming, arguendo, that the amendment was properly allowed, and pretermitting any discussion of the inconsistency in asking the court to compel the defendant to remove the structures so as to afford light and air to that which plaintiff intends to destroy, it is inconceivable that plaintiff can hope to derive any benefit from the court's ruling. In the first place no testimony was offered to show that plaintiff's tenants, if any, are complaining of the deprivation of light and air. And what is more important, plaintiff has offered no evidence whatsoever to show that a servitude of light and air has been established on the leased premises in favor of his adjoining property. Under the provisions of the Louisiana Civil Code, Art. 711, one has the right to obtain or impose upon his land servitudes of view or of light or of preventing the view or light from being obstructed or of raising buildings or walls or of

preventing them from being raised. However, these servitudes do not exist as a matter of right and must be established in conformity with Article 743 of the Code which provides that "Servitudes are established by all acts by which property can be trans-, ferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery". Considering this codal article in the light of the fact that the instrument of lease is silent with respect to the height of structures to be placed by the lessee upon the leased premises, it is clear that plaintiff has offered no evidence of the creation of any servitude of light and air and therefore is not entitled to any such servitude.

Paragraphs 7 and 11 of the lease are incorporated in the findings of fact as paragraphs 3, 4 and 5. Most of the argument in this case is centered on the meaning of paragraph 7, though it is of course conceded that the true meaning of the instrument can only be arrived at after a consideration of all of its provisions. In paragraph 7 it is stipulated that the lessee shall have the privilege of using the premises for the purpose of operating thereon a gasoline service station and for the sale of tires, tubes, batteries and automobile accessories, and any other incidental commercial activity, and in paragraph 11 it is provided that lessee shall have the right to sublet the premises, or any portion thereof, or to assign the lease, but that such subletting or assignment shall not relieve the lessee of the covenant to pay rent, or to permit the use of the premises for other purposes than herein indicated. Plaintiff contends that paragraph 7 should be construed as expressly prohibiting the defendant from using the premises for other than the operation of a service station and that paragraph 11 shows that this was its purpose. Defendant on the other hand contends that paragraph 7 was inserted in the lease for the protection of the lessee and not to restrict the manner in which it was to use the premises; that the language used is permissive and not prohibitory, merely stating that the lessee shall have the privilege of using the premises for the purpose of operating a gasoline service station and it is not stipulated that the lessee cannot use the premises for any other purpose, other than the operation of a gasoline service station. Furthermore, that paragraph 11 cannot be availed of unless there is some provision in the lease which prevents the use of the premises for the purposes to which it is now devoted.

The evidence shows that plaintiff consulted counsel before signing the lease and that he did not at that time demand any restriction upon the lessee's right to use the premises in any manner it so desired. Plaintiff testified that in his negotiations with Oxford of the Pan-American Oil Company he raised the question of reserving his advertising rights on the lower end of Claiborne Street and was informed that it was against the policy of the company to permit commercial advertising around a station of the type proposed. Plaintiff as an experienced businessman had no right to assume that the company's then existing policy with respect to other persons erecting advertising structures on its property would not change throughout the years and that it would not erect any such structures itself. If plaintiff had any objection to the erection of advertising structures on the premises in question he should have made that fact clearly known to the company officers who passed on the lease. That it was not his intention to limit the use of the premises by granting to defendant only the right to construct and operate a filling station is shown by his conduct subsequent to the making of the lease. Duclos, a former employee of General Outdoor Advertising Company, testified that when his company received a letter from plaintiff terminating, in accordance with the lease agreement, their right to maintain an advertising structure on the premises, that he went to see plaintiff to find out precisely what he had done with the property and he was told by plaintiff that he had leased the property to Pan-American Petroleum Corporation and he would have to see them about advertising rights as he had nothing more to do with the property. Furthermore it will be remembered that plaintiff went to the station two or three times a week to purchase gasoline, that he saw the frames being erected and knew that signs would be placed thereon, yet he did not protest until he knew that the defendant did not intend using the frames for advertising its own products. Considering the nature and subject matter of the contract and the purpose of its execution, it seems clear from the whole context of the agreement as it does from plaintiff's testimony, that the parties did not intend to restrict the use of the premises to the operation of a gasoline service station. In any event the most that

788

can be said is that the language of the lease is of doubtful meaning and as was said in a syllabus in the case of Murrell v. Lion, 30 La.Ann. 255, which was cited with approval in the case of Martin v. Martin, La. App., 181 So. 63: "Any doubt as to the intentions of the parties to a contract of lease, arising out of uncertain terms of the contract, will be construed in favor of the lessee. It is the business of the lessor to have the agreement expressed in clear and certain terms."

■■ But assuming that this construction is wrong and that the lease should be construed so as to restrict the defendant from using the premises for any purpose other than the operation of a gasoline service station, this would avail plaintiff nothing for there is no force in the further contention that defendant was engaged in the business of commercial advertising and not in an "incidental commercial activity". The evidence which is entitled to the greatest weight shows that the defendant had advertising boards at the majority of its stations and that the placing and use of advertising boards on filling station property was a normal incidental activity to the operation of a filling station. The fact that defendant has a contract with the General Outdoor Advertising Company from which it derives a revenue of $60 a month does not in and of itself furnish any basis for the argument that defendant is engaged in the business of commercial advertising.

### Conclusions of Law.

1. The lease contains no provision prohibiting the erection of the structures of which the plaintiff now complains or limiting the use which may be made of the premises and no such restriction was contemplated by the parties.

2. Where as here the lease contains no restrictions to the contrary the lessee is entitled to derive the profit that accrues to it indirectly through advertising its own products or it may, if it choose, derive its profit from selling the space to others to advertise their business.

3. The defendant's use of the premises for the purposes to which it is now devoted is not in violation of the agreement of lease, consequently, plaintiff's prayer for injunctive relief must be denied and his suit dismissed.

The clerk is instructed to enter judgment accordingly.