LE SUEUR, Judge.
Plaintiffs are the owners of a building in Norco, Louisiana, which is under written lease- to the defendant. For some years, the property has served as a Tastee Freez outlet, a use which predates the plaintiffs’ ownership.
The lease provision pertinent to this litigation provides that:
“The Lessee shall use the leased premises only in connection with and in furtherance of Lessee’s operations of a Tas-tee Freez retail store.”
Pursuant to this provision, Allen Weber, a sublessee, began operations on April 1,1967. The record suggests he was both energetic and successful. In the past the business had periodically been seasonally closed and sales of hot dogs, hamburgers, and french fries had been sporadic. Weber, improved and expanded the outlet, keeping it open year round and adding considerably to his short order menu by offering such items as barbecue products, fried chicken, fried shrimp and fried fish.
On August 12, 1968, after some eighteen months of Weber’s operation, the plaintiffs, who have an interest in a restaurant across the street from the Tastee Freez, and who were evidently suffering from Mr. Weber’s competition, padlocked the premises and sued for eviction.
The suit is based upon the premise that chicken, barbecue, and shrimp sales violate the cited provision of the lease. The trial court rescinded the lease and upheld the nonjudicial eviction. The defendant has appealed.
Reasons for judgment are a matter of record. In essence, the trial court, through reference to past operations and to an eight-month installment schedule (as opposed to a twelve-month plan), construed the phrase “operations of a Tastee Freez retail store” so as to confine the business to a seasonal outlet for the sale of malts, freezes, ices, soft drinks and ice cream only. We cannot agree.
In Riverside Rlty. Co. v. National Food Stores of La., Inc., La.App., 174 So.2d 229 at p. 232 (4th Cir. 1965), this court observed:
“The lessor, like the vendor, must explain himself clearly respecting lessee’s obligations, and any obscure or ambiguous clause is construed against him. Uniola Real Estate Co. v. Levy Mattress Co., Orl.App.No.8151; Rosenthal v. *650 Prutsman, Orl.App.No.8392; see LSA-C.C. Art. 2668. The lessor and lessee must abide by the agreement as entered into at the time of the lease. Jackson Brewing Co. v. Wagner, 117 La. 875, 42 So. 356.
“Any doubt regarding intentions of parties to a lease, arising from uncertain terms of the contract, will be construed in favor of lessee. Boh v. Pan-American Petroleum Corp., D.C., 37 F.Supp. 785, reversed on other grounds, 5 Cir., 128 F.2d 864.”
Absent compelling evidence to the contrary, this rule requires, at the very least, that Mr. and Mrs. McMillan accept the language of the lease in its ordinary significance.
The ordinary significance of phrases such as “operations of a Tastee Freez retail store” is also well settled. Tynes v. Kelly, La.App., 116 So.2d 54 (1st Cir. 1959), for example, is clearly analogous. There, the court, by Judge Tate, ruled as follows:
“ * * * we see little justification for plaintiff’s assumption that the contract stipulation that the premises be operated as a ‘drug store only’ could be interpreted to limit the use of the premises solely to the sale of drugs or medicine. In its ordinary signification in present day America, the term ‘drug store’ denotes an emporium devoted to the sale of many other things besides drugs, such as notions, sodas and beverages, toys, lunches, cosmetics, etc. (see 28 C.J.S. Drug, sub-heading Drug Store p. 497); and within the connotation of the term is the operation therein of pay telephones, pinball machines, and other customer-attracting devices.”
It would seem apparent that food sales are connotatively within “operations of a Tastee Freez retail store” as stated in the lease. The record supports this conclusion. The phrase was placed in the léase by Richard Bell, the Creole president. Bell, who operates some twenty Tastee Freez franchises, patterned his language from that used for other Tastee Freez stores.
His testimony as to the standard Tastee Freez operation is both clear and uncontra-dicted. All franchise contracts are urged to sell the widest possible variety of short orders. It is also clear that this latitude is common within the dairy food franchise industry as a whole, as the plaintiffs must have known at the time of the contract of lease.
Further, we are not impressed by the eight-month payment plan. Considering the nature of Mr. Weber’s operation, his profit structure may well be seasonal regardless of the variety of short orders listed on the menu.
For these reasons, the judgment appealed is reversed and set aside and the plaintiffs are hereby enjoined from interfering with the defendant’s peaceful possession of the leased premises. All costs in both courts are to be paid by appellees.
Reversed and rendered.