ELLIS, Judge.
On November 21, 1961, at approximately 10:00 P.M., Norma Jean Courtney, minor daughter of Leslie Courtney, was driving the latter’s 1961 Comet sedan in an easterly direction on U. S. Highway 190 near its intersection with Cedar Street in the Town of Livingston, Louisiana, when a 1953 Buiclc sedan being driven by a defendant, James W. Sullivan, and being operated in a westerly direction on U. S. Highway 190, attempted to make a left-hand turn at the Cedar Street intersection, resulting in a collision which is the subject matter ol this *297 suit for damages for personal injury to Norma Jean Courtney and property damage not covered by the collision insurance in the sum of $100.00, together with past and future medical expenses sought individually on behalf of Leslie E. Courtney, father of Norma Jean Courtney. A motion for summary judgment was filed on behalf of the defendant, Allstate Insurance Company, which was overruled, whereupon it filed answer in the nature of general denial and, in addition, specifically plead as follows:
"1.
“That the 19S3 Buick automobile operated by James W. Sullivan at the time of the accident on November 21, 1961, was owned by the said Sullivan, had not been reported to defendant, Allstate Insurance Company, as an additionally owned vehicle within thirty days of its acquisition, and that therefore under the terms of Allstate Insurance Company Policy No. 45-941-799, which is specially pleaded herein as if and as though copied herein in extenso, Allstate Insurance Company, was not the insurer of James W. Sullivan at the time of this accident nor owed any obligation under said policy;
“2.
“Alternatively, but only in the event this Honorable Court finds coverage in Allstate Insurance Company, in that event, defendant specially pleads the contributory negligence of Norma Jean Courtney, serving to bar her recovery herein in that she failed to keep a proper lookout, failed to keep her vehicle under proper control, and operated her motor vehicle at a high and excessive rate of speed;”
The defendant, James W. Sullivan, filed no answer but we find in this transcript the following:
“TRANSCRIPT of the notes of evidence taken on the Confirmation of Default had herein in Open Court at Livingston, Louisiana this 5th day of December, 1963 before His Honor, Warren W. Cornish.
Representing Plaintiff: Mr. Bob Mack.
* * s|: ‡ * *
“This is against the defendant William J. Sullivan.
“I offer the minute entry dated December 2, 1963 and all the testimony taken herein both on the 4th of June, 1962 and on the 2nd of December, 1963. * * *
“MRS. BEA LEA, BEING DULY SWORN:
“Q. Has any answer or other pleadings been filed in this matter?
“A. No sir.”
Neither the minute entry of December 2, 1963 nor the testimony referred to as being taken “herein both on the 4th of June, 1962 and on the 2nd of December, 1963” is contained in this record. Presumably, the minute entry of December 2, 1963, contained the entry of preliminary default and the testimony referred to is the basis of confirmation of the default. Whether this is sufficient basis for the judgment rendered herein against James W. Sullivan we at this time express no opinion.
The case was duly tried and judgment rendered in favor of the plaintiff, Norma Jean Courtney,[1] and against the defendants, Allstate Insurance Company and James W. Sullivan, in solido, in the full sum of $12,500.00, together with legal
174 So.2d — 19Vz *298 interest thereon from judicial demand until paid; and in favor of the plaintiff, Leslie E. .Courtney, and against the defendants, Allstate Insurance Company and James W. Sullivan, in solido, in the full sum of $1829.-25, together with legal interest thereon from judicial demand until paid, and all costs of the suit. Allstate Insurance Company appealed from the above judgment. James W. Sullivan took no appeal.
Allstate Insurance Company was the insurer of James W. Sullivan under a policy of insurance covering a 1949 Dodge truck and was sued by the plaintiff herein .under the provisions of the policy providing coverage for non-owned vehicles. Allstate Insurance Company denied coverage and maintained the 1953 Buick was owned by James W. Sullivan and he had failed to comply with the provisions of the policy which required that in order for a newly acquired automobile to he covered under the policy, named insured or his spouse must notify the company within thirty days of the acquisition of said automobile. The policy was offered in evidence and contains such a provision under a clause with regard to “Newly Acquired Automobile * * * ”. Allstate alleges and the record sustains such an allegation that Sullivan had not complied with the terms of the policy by reporting the automobile within thirty days and, therefore, it was not obligated under the policy to cover the 1953 Buick automobile, unless the record sustains the contention of the plaintiff that Sullivan had borrowed the 1953 Buick from his brother-in-law and therefore was covered under the policy provisions providing coverage for non-owned vehicles. The question of coverage is the main question before the court. There is no doubt, from the record and evidence produced, in the mind of this Court that the sole proximate cause of the' accident, injury and damage to the plaintiff was the negligence of Sullivan in attempting to make a left turn in violation of the law. He testified that he put his signal light on to turn left when about 100 feet from the intersection, at which time he thought that the plaintiff’s car was a safe distance approaching in the .opposite or eastbound lane and that when he arrived at the intersection he turned left and as the front portion of his car got into the eastbound lane he then saw that the plaintiff’s car was only 25 or 30 yards away and attempted to pull back into the west lane but the vehicles collided in the eastbound lane before he could succeed in this maneuver. A further detailed discussion of the testimony on this point would be surplusage.
The facts are not seriously in dispute but there had been a change in the statements and testimony' of Sullivan and his brother-in-law, Smiley, given soon after the accident and later statements and testimony on the trial upon the fact as to whether Sullivan had borrowed the 1953 Buick just prior to the accident or whether he had bought it more than thirty days prior to the accident. There is no question but that if he owned the automobile he had not complied with the terms of the policy and there would be no coverage. On this question of fact the record shows that immediately after the collision and during the investigation by an officer of the town of Livingston, Sullivan told the latter that he owned the automobile. Within the next day or two he called the office of the Allstate Insurance Company to find out if he would be covered and was told that he would not as he had not reported a new automobile in accordance with the provisions of the policy. He also inquired of other people and came to the conclusion that he would not be covered unless he could come under the provision providing coverage for non-owned vehicle and thereafter he and his brother-in-law both gave a written statement to an adjuster that Sullivan had borrowed this automobile from the brother-in-law who was in the used car sale business and the statement went into detail. Thereafter, the insurance agent who had sold Smiley insurance informed the latter that suit might be entered against him and his insurance company. Smiley talked to his brother-in-law, Sullivan, and, according to both, they decided to tell the *299 truth, which they stuck to throughout the trial, that Smiley had, in fact, sold this 1953 Buick to Sullivan and that it had been in his possession since approximately the 29th of May preceding the accident on November 21, 1961. Smiley got in touch with the insurance adjuster and told him that he wanted to tell the truth and signed a statement to the effect that the car had been bought by Sullivan from him and later on the same day Sullivan also gave a written statement to this effect. They did not waver in their testimony on the trial of the case although Sullivan’s memory of the transaction was very faulty. Unless there be some testimony in this record which would convince the court that either Sullivan had bought the automobile or borrowed it, we could not hold Allstate liable on the conflicting, contradictory and altered testimony of Sullivan and Smiley, both of whom are interested in the outcome of this litigation and in addition, are related to each other as brothers-in-law. However, we believe that there is testimony in this record that balances the scales in favor of the last statements and testimony of these two witnesses that actually Sullivan had bought this 1953 Buick on May 29, 1961. First, at the scene of the accident Sullivan without hesitation told the investigating officer that he owned the 1953 Buick and, second, when he called the Allstate office in Baton Rouge “Right after the wreck”, he told a Mr. Graham who was employed by Allstate Insurance Company at their office at that time that he had bought this Buick. Third, we have the testimony of Sullivan on cross-examination, as follows:
“Q. After that took place and two months elapsed and Mr. Hatcher came to see you again in January, you and Mr. Smiley had talked again, is that right?
“A. Yes, sir.
“Q, And you both decided you wanted to come clean and make a true breast of the honest facts, is that right?
“A. Yes sir.
“Q. And then Mr. Smiley called the All State Office and said send the man back out I want to change our statements?
“A. Yes sir.
“Q. And the second statement that you identified here today is the truth?
“A. Yes sir.
“Q. Was it the truth when you gave it on January 10, 1962 ?
“A. Yes sir.
“Q. And was it the truth the night of the accident?
“A. Yes sir.
“Q. Is there any doubt in your mind that you owned then and own now that 1953 Buick automobile?
“A. No sir.
“Q. Do you owe anything more on it to Mr. Smiley?
“A. No sir.
“Q. Did you ever owe Mr. Smiley anything other than the initial payment of $350?
“A. No sir.
“Q. Did you pay him $350?
“A. Yes sir.
“Q. If I told you that the bank note was filed on May 29, 1961, if I told you that was the date that you executed the note at the bank and Mr. Smiley endorsed the note, would that refresh your memory of when you bought the car?
“A. I don’t know that I bought it in the month of May, no.
“Q. Did you execute a note at the bank?
“A. Yes sir.
*300 “Q. Did they give you some money for the note or credit or some way adjust the records?
“A. $400, yes sir.
“Q. Mr. Smiley endorsed that note?
“A. Yes sir.
“Q. Was that how you got the loan ?
“A. Yes sir.”
Additionally, we have the testimony of Smiley on direct examination by the counsel for Allstate Insurance Company, as follows:
“Q. Do you know the 1953 Buick automobile that we are talking about ?
“A. Yes sir.
“Q. Did you ever own that automobile?
“A. Yes sir.
“Q. When did you acquire that automobile?
“A. Well, I acquired it as near as I can remember, it was sometime in April.
“Q. Of what year?
“A. 1961, I believe it was.
“Q. Did you ever sell that automobile?
“A. Yes sir.
“Q. To whom?
“A. Mr. Sullivan.
“Q. Do you remember when?
“A. To the best of my recollection it was May, sometime.
“Q. Do you remember roughly when in May?
“A. I called the bank this morning and asked them when it was—
“Q. Speak a little louder.
“A. I called the bank and asked them when the business was transacted and I believe it was on the 29th day of May.
“BY MR. SIMS:
“That is hearsay information. If he doesn’t remember or if he doesn’t have notes. He said somebody told him on the telephone.
“BY THE COURT:
“He has already answered it.”
For the above reasons, we are of the opinion that Sullivan actually bought this automobile on the 29th day of May, 1961 and had it in his possession from that time until the date of the accident and under the plain provisions of the policy he was not covered and the judgment as to Allstate Insurance Company (only appellant herein) must be reversed and it is so ordered and the suit of plaintiff dismissed at her cost as to Allstate Insurance Company.
The other defendant, Sullivan, has neither appealed nor answered the appeal and the judgment cannot be disturbed insofar as he is concerned and it is therefore affirmed.
Judgment reversed in part and affirmed in part.
REID, J., dissents.

. Before the judgment was rendered Norma Jean Courtney became of age and she was substituted in fuil as plaintiff in the place and stead of her father, Leslie E. Courtney. As he was not a party to the suit prior to or at the time of tbe rendition of the judgment in which he was awarded special damages in the amount of $1829.25, it must be reversed, and judgment rendered rejecting his demand.