202 So.2d 323 (1967)
SLIDELL INVESTMENT COMPANY, Inc.
v.
CITY PRODUCTS CORPORATION.
No. 7103.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
*324 Curtis R. Boisfontaine of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for appellant.
Murphy Moss of Lemle & Kelleher, New Orleans, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
This suit arises over a written commercial lease between plaintiff, Slidell Investment Co., Inc. as Lessor, and defendant, City Products Corporation, as Lessee.
Plaintiff alleges that on October 12, 1959, it leased to defendant a one story building, directly adjoining on the south the National Food Store building, to be erected on a tract 38 feet front by 135 feet deep in Square 3 of Salmer Addition No. 1, Annex to the Town of Slidell, Louisiana. The lease was for a term of 10 years and 4 months, beginning October 1, 1960, and ending January 31, 1971. The consideration for said lease is shown in plaintiff's petition to be $6,412.50 per year and in addition thereto for each year gross sales should exceed $142,500.00, lessee agreed to pay four percent of such gross sales in excess of $142,500.00. Plaintiff alleges that on or about April 30, 1964, without Lessor's consent and in violation of the lease agreement, defendant vacated the leased premises, thereby reducing annual gross sales during the then current year and eliminating any possibility of generating annual gross sales in excess of $142,500.00 during any subsequent year of the lease.
Plaintiff shows that the rental commenced to accrue under the terms of the lease on September 1, 1960, with the lease year for purposes of computing rental thereunder extending until August 31, 1961, and subsequent lease years for rental purposes extending from September 1 of each year to August 31 of the following year. It further shows that for the year in which defendant vacated the premises the gross sales exceeded the stipulated $142,500.00 by an estimated $127,638.10, causing the additional rental due petitioner to be $5,105.52 over and above the basic rental of $6,412.50, or a total of $11,518.02; that defendant paid only $10,831.94, leaving a balance due for that year of $686.08 on the excess rental plus the basic rental for the months of November and December 1964, and January, February, March, April, May and June of 1965, aggregating $4,275.04. Plaintiff reserved its rights to claim and sue for any basic and additional rentals falling due subsequent to the filing of its petition.
Defendant filed a general denial and specifically alleged that under the terms of the lease in question, particularly under Article I(b) thereof, the parties agreed that the premises would be used and occupied "for the sale, storage or display of goods, wares and merchandise" (emphasis supplied in petition) and consequently no obligation existed on the part of defendant or any sub-tenants of defendant to sell goods on the premises. Defendant further contended *325 there had been no abandonment of the premises, that rent had always been paid, and that it exercised its unqualified right to sub-lease the premises under Article II (n) of the lease subject to the terms and conditions of the original lease.
Plaintiff amended its petition to pray for rental in the sum of $11,529.88 together with legal interest on $6,186.08 thereof from September 30, 1965 until paid and on each monthly installment of basic rental claimed from its due date, together with 10% attorneys fees and costs, subject to payments tendered but not accepted for basic rental, and again reserving its right to claim and sue for basic and additional rentals falling due subsequent to filing of suit.
After trial of this matter the Trial Court rendered judgment in favor of plaintiff, Slidell Investment Company, Inc. and against defendant, City Products Corporation, in the sum of $5,105.52, together with legal interest from September 30, 1964, until paid, and in the further sum of $5,162.40, together with legal interest thereon from September 30, 1965, until paid, and 10% attorneys fees. The judgment further reserved to plaintiff the right to claim and sue for any basic and additional rentals under the lease which fall due after April, 1966 and remain unpaid, such additional rentals to be computed at the rate of $5,162.40 for each remaining year during the term of the lease. Defendant has lodged an appeal from said judgment.
The main point at issue in this case is whether or not there was an implied continuous operation clause and whether or not the defendant violated a continuous operating agreement.
The defendant contends it is self evident that the lease is silent on this subject and that if plaintiff is to have any right whatsoever regarding this matter it has to be based on the statutes and jurisprudence of the State of Louisiana.
The facts are clear that plaintiff did construct a building in its shopping center on Pontchartrain Bridge Road in Slidell for the purpose of a variety store. The defendant was well aware of that fact and was a participant in the erection of the store. It is also clear that it was the defendant's policy to take the lease in its name and then sublease to one of its distributors who operated a subsidiary of defendant's corporation. The defendant was protected in the lease against the operation of any other variety store within one thousand feet. The sublease from the defendant to Haas Distributing Company, Inc., holder of its local Ben Franklin Stores franchise, clearly shows the sublease was for the purpose of operating a Ben Franklin Variety Store.
It is clear from the lease itself and from the other evidence that it was the intention that plaintiff be paid a basic and a percentage rental on the premises. It is the opinion of this court that the record amply shows that this lease agreement would not have been entered into had plaintiff not anticipated receipt of percentage rental.
The record shows that after the operation of the store in question for some time, a new shopping center designated as Tammany Mall was opened across the street and defendant's representative testified that they became concerned that some other competition would operate a variety store in the Tammany Mall, and it then leased a new store in the new shopping center on a more favorable lease basis and commenced selling merchandise in the new store during March of 1964 and used plaintiff's premises as a warehouse for several months in 1964 and then vacated plaintiff's premises. It cancelled its sublease to Haas Distributing Company, Inc. and executed a new sublease covering plaintiff's premises in favor of Haas, Inc. and simply passed on to Haas the defendant's rental obligations to plaintiff and arranged for Haas to further sublease plaintiff's premises to third parties. Thereafter, it tendered to plaintiff only basic rentals on plaintiff's premises. Haas subleased to a Mr. and Mrs. Van Scoter for the sole purpose of the operation of *326 a furniture store and defendant operated a variety store across the street from the time it left plaintiff's premises until the date of the trial.
Defendant contends that its move across the street was an economic necessity and plaintiff contends that defendant's move across the street was in exercise of poor business judgment. It should be emphasized that there is no evidence in the record to indicate that plaintiff's shopping center has failed as a business enterprise or that the other stores located in plaintiff's shopping center have failed as business enterprises because of location. It is, therefore, the opinion of this Court that regardless of the testimony as to whether or not the move by defendant to the new shopping center was or was not economically sound, the fact is that the move was made purely and simply for the economic benefit of the defendant without regard to the consequences to the plaintiff. Also, there is much evidence in the record to indicate that defendant's business would have been just as successful if it had stayed in plaintiff's shopping center as it was after moving to the new shopping center.
It is clear that the defendant was able to take advantage of two shopping centers. Its sublease prohibited the use of plaintiff's premises as a variety store while at the same time it had exclusive rights in the new shopping center across the street. In colloquial terms, the defendant wanted to eat its cake and have it too.
In the case of Rials v. Davis, 212 La. 161, 31 So.2d 726, Judge Ponder as the organ of the Court said:
"We may point out that under the provisions of our Code, the lessee is under an obligation to return the leased thing at the expiration of the lease in the same state in which he received it, except for the necessary allowance for wear and tear. Articles 2719 and 2720 of the Revised Civil Code. The thing leased was the business and the equipment necessary for its operation. There is no question that the parties contemplated the continuation of the business as a going concern during the term of the lease. A mere reading of the lease itself and its provisions above referred to discloses this fact."
See also Selber Bros. v. Newstadt's Shoe Stores, 194 La. 654, 194 So. 579 (1940) and 203 La. 316, 14 So.2d 10 (1943), wherein the court held:
"As shown above, defendant was required to conduct its operations in plaintiff's premises for the mutual benefit of the parties to the contract, and in a manner consistent with good business principles in order that its lessor would realize the largest possible amount or rent over and above the stipulated minimum of $200 per month. The implied obligation of the lease demanded this; and plaintiff was entitled to and did rely on a performance of that kind. Of course, it was not encumbent upon defendant to suffer a large financial loss, if such would result by continuous and regular operations in the premises until the expiration of the lease, merely for the sake of providing plaintiff with its customary rentals. But, according to our appreciation of the evidence, no such loss would have been so occasioned."
In regard to the case of Riverside Realty Co. v. National Food Stores of Louisiana, Inc., La.App., 174 So.2d 299, writs refused 247 La. 1037, 175 So.2d 647, we do not feel that case applicable herein. There the Court held as a matter of fact that the trial judge was correct in holding that the defendant National Food Stores was guilty of no wrongdoing or negligence that made their operation of the store in the shopping center a failure after 16 months because other national chain store operators, including Woolworth and Morgan & Lindsay, rejected the shopping center as a bad venture and that National suffered continued losses and destruction of its property. The Court further held that Riverside was derelict *327 in failing to complete the shopping center, most of which remained incomplete, and necessarily unrented. We do not feel that the language of the Court concerning the necessity of having a continuous operation clause in the lease was of any importance in the decision of that Court. This is emphasized by the fact that the Court in the Riverside case discussed the Selber and Rials cases as distinguished from the Riverside case and quoted that portion of the Selber case which we quote above, that is:
"* * * Of course, it was not encumbent upon defendant to suffer a large financial loss, if such would result by continuous and regular operations in the premises until the expiration of the lease, merely for the sake of providing plaintiff with its customary rentals. But, according to our appreciation of the evidence, no such loss would have been so occasioned."
Although we have no doubt that the many common law authorities cited by the defendant are sound in those jurisdictions, in view of the Louisiana Statutes and jurisprudence regarding leases, we do not feel they are relevant here.
It is clear from a reading of the Riverside case that the decision was based on the fact that the entire shopping center was a failure and the defendant therein was guilty of no negligence which resulted in its failure. In the case at issue, had the defendant been able to show conclusively that its operation was a failure through no fault of its own, then the decision of the District Court would have been in error. The exhibits placed in the record clearly show that while the defendant was operating in the plaintiff's shopping center it was not suffering any financial loss but was operating at a profit. We do not feel that the defendant should be permitted to use the method it did to prevent competitive business in two shopping centers.
In regard to the quantum for damages, although the trial judge rendered no written reasons for judgment we cannot conclude from the evidence in the record that his method of calculation was in error. As defendant's brief is silent on the matter of calculation, and the whole argument appears to be to the effect that no percentage rental is due, we are forced to take the computation as set forth by the plaintiff in its brief as being correct.
We thus conclude that the defendant by its failure to urge that the trial judges' computation was incorrect, has waived any right to question the amount of the judgment as set forth by the Trial Court. We would state, however, that we have examined the records and the exhibits and we do not find that the trial Court is in error in its decision.
Affirmed.