194 So. 579

### SELBER BROS., Inc., v. NEWSTADT'S SHOE STORES et al.

No. 35346.

Feb. 5, 1940.

Rehearing Denied March 4, 1940.

Pugh, Grimmet, Boatner & Simon, of Shreveport, for plaintiff-appellant.

Isaac Abramson, of Shreveport, for defendants-appellees,

O'NIELL, Chief Justice.

The plaintiff is appealing from a judgment dismissing this suit on an exception of no cause of action. The suit is founded upon a contract by which the plaintiff leased to the defendant part of a building in Shreveport to be used as a shoe store. The purpose was described in the lease as being for the sale of men's, women's and children's shoes, women's hosiery, and shoe findings, and for a shoemaker's stand, and that of a chiropodist. The plaintiff is claiming $1,959.36 as rent, less $800 which was paid by the defendant, and is claiming also $1,000 damages for an alleged breach of the contract. The claim for the balance of $1,159.36 rent is founded upon a stipulation in the contract, fixing the rent at the minimum sum of $200 per month, plus the amount in which 6 per cent of the gross sales in each month would exceed the $200. The defendant paid the $200 regularly, for each month in advance, according to the terms of the contract, but did not pay more than the $200 for any one of the last four months of the term of the lease, namely, September, October, November, or December, 1938. It is alleged that in the corresponding four months in the year 1937, the 6 per cent of the gross sales amounted to $1,959.36,—thus: $524.77 in September, $420.67 in October, $453.30 in November, and $560.62 in December, 1937. And it is alleged that the 6 per cent of the gross sales in the eight months preceding the month of September, in 1938, averaged $446.30 per month. The plaintiff does not claim that 6 per cent of the defendant's gross sales amounted to more than $200 in September, October, November, or December, in 1938. The claim is that the reason why the gross sales in those four months did not amount to enough for 6 per cent thereof to be more than $200 per month is that the defendant wilfully violated one of the implied obligations of the contract of lease, by changing the character of the business, in the latter part of August, 1938, from that of a high-class and fashionable shoe store, known as "Newstadt's", to that of a low order of business, conducted in the name "Mitchell's", and consisting of continuous close-out sales, of only cheap brands of shoes, and of what are called end-of-

the-season close-outs, old styles, and slow movers, brought in from other stores of the defendant. It is alleged that that character of business was conducted in the leased premises from the latter part of August until the 25th of October, 1938, when the defendant abandoned the leased premises and moved the remaining stock of goods to a new location, which the defendant had rented in the latter part of August, 1938, for carrying on the business which was theretofore conducted in the name "Newstadt's", in the premises leased from the plaintiff. It is alleged that the sales in September, October, November and December, 1938, would have amounted to as much as they amounted to in the corresponding months in 1937, if the defendant had not violated the contract, first by changing the character of the business and afterwards by abandoning the leased premises before the lease expired. It is alleged, alternatively, that, if the $1,159.36 is not recoverable as rent, it is recoverable as damages. It is alleged that the carrying on of the character of business that was carried on in the leased premises from the latter part of August until the 25th of October, 1938, and the closing of the place and keeping it closed from that date until the end of the term of the lease,—until the end of the year 1938,—lessened the rental value of the premises for at least six months, and to the extent of $1,000; hence the claim of $1,000 damages. It is alleged that prompt objection and repeated protests were made by plaintiff against the using of the premises for a purpose not contemplated, and against the closing of the store before the lease expired, but that these objections and protests were of no avail.

The defendant's plea or exception of no cause of action is founded upon the theory that so long as a tenant conducts in the leased premises the kind of business generally that is stipulated in the contract of lease—for example a shoe store—and so long as the tenant pays promptly at least the minimum rent stipulated in the contract—the landlord has no cause or right to complain that the business is conducted in such a way that it will not produce additional rent, consisting of a percentage of the gross sales, as stipulated in the contract. Whether that doctrine is applicable to a given case depends upon the intention with which the parties entered into the contract of lease, as expressed in the contract,—construed in the light of the circumstances in which the contract was made. For example, if the minimum rent stipulated in the contract is considered by the parties to be in itself a fair and adequate rent, and if the contingent sum that is to be added on the basis of a percentage of the volume of business to be done is in the nature of a bonus which the lessee is willing to pay if he does more business in the leased premises than he expected to do, that fact of itself may shed light upon the intention of the parties. But that is not the case here. In this case the contract of lease was a renewal of one that was made first in 1933 and that was renewed twice on the same terms on which it was made originally. The last renewal, being the one on which this suit is founded, was made for the year commencing on January 1 and

ending on December 31, 1938. It is alleged that at the time of making this renewal the business that was being conducted in the leased premises by the defendant was well established as a first-class and fashionable shoe store, catering to and receiving a high-class trade, demanding high-priced and profitable goods; that the rent, at the rate of 6 per cent of the gross sales had amounted to more than $400 in every month,—as we have shown in detail; that the plaintiff would not have consented to a renewal of the lease except in the belief from past performances that the character of the business would continue to be the same as it had been under the lease which was extended or renewed, and in the belief, therefore, that the monthly rent would be approximately the same as it had been under the same stipulation for 6 per cent of the amount of the gross sales in each month. In that connection it was stipulated in the contract,—a copy of which is made part of the plaintiff's petition,—that the lessee should furnish the lessor a written report within two days after the expiration of each month showing the exact amount of the daily sales made during the month, and that the lessor should have the right at any and all reasonable times to make any investigation, examination or audit of the lessee's books, accounts and cash register, that might be necessary to ascertain the correct amount of the gross sales that were made from month to month. These stipulations support the contention that the plaintiff, in renewing the lease, was depending upon the implied obligation of the lessee to conduct the business for the mutual benefit of the parties to the contract, and thus in good faith to make the six per cent of the gross sales amount to as much more than the stipulated minimum rent per month as it could reasonably amount to.

The doctrine of implied obligations is stated in the Civil Code, in article 1903, thus:

"The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect."

The pertinent article relating to contracts of lease, in the Civil Code, is article 2711,—viz.:

"If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.

"The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all the losses which the owner may have sustained through his misconduct."

It may be that the change which the defendant is said to have made in the use of the premises, in the latter part of August, 1938,—and the abandonment of the premises on the 25th of October, 1938, —was only a necessary incident to the defendant's moving into the newly-rented location at the expiration of the lease of the plaintiff's store; and it may be found, therefore, on the trial of the case, that the change in the use of the leased prem-

ises was not such a change as is referred to in article 2711 of the Civil Code, as the making of another use of the property "than that for which it was intended". But that is a matter of defense, to be heard on the trial of the suit. The purport of the plaintiff's complaint is that the defendant made a drastic change in the use of the premises, more than four months before the expiration of the lease, and thereby wilfully lessened the rental value of the place as a first-class shoe store, in order to divert the business to the new location which the defendant had rented more than four months before the expiration of this lease. The defendant had the right perhaps to preserve the good will of the established business, and to do everything that was fair and reasonable to bring the old customers or patrons of the business to the new location,—so long as the defendant did not violate any implied obligation of the contract with the plaintiff. But whether the defendant had the right to so change the use of the premises—four months before the expiration of the lease —as to make a material reduction in the monthly rent that was being paid—and so as to impair the subsequent rental value of the leased premises—to the advantage of the lessee—is the question which is presented by the petition in this case.

A somewhat similar case was that of Cissna Loan Co. v. Baron, 149 Wash. 386, 270 P. 1022, decided by the Supreme Court of Washington, in October, 1928. The case is stated in the two paragraphs of the syllabus, thus:

"Where defendant purchased growing department store business from plaintiff and leased building from plaintiff, agreeing to pay rent based on percentage of gross sales in business conducted 'in said building,' defendant held liable for percentage on total gross sales, though he moved two departments into adjoining building owned by another and used space vacated for enlarging business office.

"That lease, fixing rent of building for department store business on basis of percentage of gross sales, provided for minimum rental, did not give lessee right to remove two departments into adjoining building without paying percentage of sales in such departments."

In Spring Brook Railway Co. v. Lehigh Coal & Navigation Co., 181 Pa. 294, 37 A. 525, in 1897, it was held by the Supreme Court of Pennsylvania that, under a contract of lease in which the rent was fixed at a certain percentage of the gross receipts of the business, the lessee was obliged to "conduct the business with fair regard to the interest of the lessor as well as itself". Although no minimum rent was stipulated in that case it appears from other decisions that such a stipulation does not exempt the lessee from the implied obligation to conduct the business with fair regard for the interest of the lessor in the additional rent that is to be paid on the basis of a percentage of the gross receipts of the business. For example, in Sinclair Refining Co. v. Davis, 47 Ga.App. 601, 171 S.E. 150, decided by the Court of Appeals of Georgia, in 1933, the second paragraph of the syllabus reads:

"Where lessee failed to operate gasoline [filling] station on premises equipped there-

for, under lease reserving rent of designated sum per gallon of gasoline sold, with $10 as minimum [rent per month], lessor could treat lessee, for period of lessee's occupancy, as tenant at sufferance, and collect as rent sum equal to rental value of premises."

In Williston on Contracts, Rev.Ed., Vol. 1, § 104A, p. 357, under the heading "Consideration in Bilateral 'Requirement' and 'Output' Contracts", a principle which in a measure is appropriate to this case is stated thus:

"A third class of cases, not wholly inconsistent with the first, finds from the business situation, from the conduct of the parties, and from the startlingly disproportionate burden otherwise cast upon one of them, a promise implied in fact by the seller to continue in good faith production or sales, or on the part of the buyer to maintain his business or plant as a going concern and to take its bona fide requirements. In other words, this view implies an obligation to carry out the contract in the way anticipated, and not for purposes of speculation to the injury of the other party, but recognizes that either. party may in good faith cease to have such output or requirement."

In the same work, in Vol. 5, § 1293, p. 3681, under the heading "Implied Promises", it is said:

"It is not only for breach of express promises that a contractor is liable but of implied promises as well; and the most serious difficulty in this matter is to determine what promises are fairly to be implied in a given contract. The principle to be adopted, however, is plain; the difficulty lies in its application. Since the governing principle in the formation of contracts is the justifiable assumption by one party of a certain intention on the part of the other, the undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included."

In the Michigan Law Review for November, 1936, Vol. 35, is an interesting comment upon the comparatively new custom of the proprietors of department stores leasing certain departments to outsiders, who agree to conduct them as integral units of the whole business and on a percentage basis. On page 105 the author of the comment has collected decisions to support this statement:

"As to the general measure of recovery by the store upon abandonment, it would likewise seem that the usual formula for breach of an ordinary contract ought to apply: an attempt to place the lessor as nearly as possible in the condition in which he would have been if the breach had not occurred. Making due allowances for the qualifying principles of mitigation, the rule of Hadley v. Baxendale, [9 Ex. 341, 156 Eng.Rep. 145], and other rules of damages, the store owner then ought not necessarily to be limited to the recovery of the minimum guaranty of 'rent'. He should also receive as compensation the reasonably expected sums in excess of that amount, as evidenced by the condition and trend of the department's business during the preceding periods; and he should be paid for any

other injuries proximately caused by the abandonment which can meet the ordinary damages test."

The defendant here cites Sieward· v. Denechaud, 120 La. 720, 45 So. 561, where the defendant, tenant, changed the name in which he was conducting the hotel business in the leased premises from that of "Hotel Denechaud"· to that of "The Inn", and it was held that.the changing of the name of the hotel was not a violation of any obligation in the contract of lease, either express or implied, and that, for that reason, and because the business was not impaired but was in fact increased under the new name, the changing of the name did not give the landlord a right of action to rescind the lease. The decision is not appropriate to this case.

The item of $1,000 claimed by the plaintiff for the alleged impairment of the rental value of the leased premises will be difficult if not impossible to prove; but we do not find it necessary to decide now, in advance of the offering of evidence on the subject, and without knowing what objection may or may not be made to the evidence when offered, whether this claim is or is not provable. Inasmuch as the exception of no cause of action must be overruled we shall let the claim for $1,000 damages abide the offering of evidence to support it.

The judgment appealed from is reversed; the exception of no cause of action is overruled; and the case is ordered remanded to the district court for further proceedings consistent with the opinion which we have rendered. The defendant, appel-lee, is to pay the costs incurred in disposing of the exception of no cause of action, including the costs of this appeal. The liability for other costs is to abide the final disposition of the case.