HAMITER, Justice.
 

 Under a written contract of date May 19, 1937, plaintiff leased to the defendant •partnership the premises known as 425 Milam Street in the City of Shreveport to "be used as a shoe store. This contract of lease, being a renewal or extension of one originally entered into between the parties in 1933, covered a period of one year ■commencing January 1, 1938, and ending December 31, 1938; and it obligated the defendant to pay a stipulated minimum monthly rental of $200 and in addition thereto the amount by which six per cent <of the gross sales in each month would ■exceed the said sum of $200.
 

 The mentioned renewal forms the basis of this suit, plaintiff insisting that there has been a violation of the implied obligations thereof. It asserts that during the months of September, October, November, and December, 1938, defendant failed to conduct the shoe business on the premises in the manner contemplated by the lease, and that by reason of such failure it was deprived of the additional or excess rentals due for those months on the percentage of sales basis. The minimum monthly rentals of $200, however, were admittedly paid.
 

 For the alleged due and unpaid additional rent plaintiff asks judgment in the sum of $1,159.36; and further it claims damages of $1,000 for deterioration in value of the leased premises.
 

 In resisting plaintiff’s demands defendant first filed an exception of no cause of action. It was sustained and the suit dismissed. An appeal to this court followed. On that appeal we reversed the judgment, overruled the exception, and remanded the case to the district court for further proceedings consistent with the views ex- ■ pressed in our opinion. 194 La. 654, 194 So. 579, 581.
 

 Defendant next tendered a plea of estoppel which was referred to the merits. Then it answered, and a regular trial was had. There was judgment sustaining the plea of estoppel, rejecting the demands of plaintiff, and dismissing the suit. It is on an appeal from that judgment, prosecuted by plaintiff, that the case is now before us.
 

 In our former opinion we referred to certain stipulations in the lease relating to plaintiff’s right to receive monthly reports showing daily sales made, and said that they “support the contention that the plaintiff, 'in renewing the lease, was depending upon the implied obligation of the lessee to conduct the business for the mutual benefit of the parties to the contract, and thus in good faith to make the six per cent of the gross sales amount to as much more
 
 *321
 
 than the stipulated minimum rent per month as it could reasonably amount to.”
 

 But we also held, in effect, that the change allegedly made by defendant in the use of the premises, resulting in a material reduction in the rentals for the four months in question, might have been a necessary incident to defendant’s moving into a newly rented location and hence justified; and that it was a matter of defense to be heard on the trial of the merits.
 

 The record discloses that for a long period prior to May 19, 1937, the rental paid to plaintiff at six per cent of gross sales had averaged more than $400 per month. On that date, when the extension for the full year of 1938 was agreed on and signed, and previously, defendant was conducting an established and successful business, handling seasonable and fresh shoes in a complete assortment of sizes, styles and colors. Such a business was continued for the remainder of 1937, and the first half of 1938.
 

 Occasionally, during those successful operations, a clearance sale was held for the purpose of disposing of merchandise that had become unseasonable. Summer shoes were so offered ordinarily in June and July. About November 1, fall shoes are considered no longer seasonable, and after that date sales of them were usually started. It was not customary to hold clearance sales in September and October.
 

 In the early part of 1938, defendant made numerous attempts to obtain from plaintiff an extension of the lease that was to expire on the last' day of that year; but each was unavailing. Whereupon <pn July 27, 1938, it entered into an agreement with Mr. T. K. Giddens for a lease on a new location at 509 Milam Street, approximately one block distant from the old one, and immediately began preparing , for its occupancy.
 

 On August 4, 1938, defendant commenced a removal sale under the name of Newstadt’s in the old premises, selling only merchandise that had been previously displayed and was on hand. No new stock of goods was offered; however, there was at the time stored in crates on the premises new fall shoes that had been purchased and received recently.
 

 By September 10, 1938, such removal sale was no longer effective; so defendant then changed the title of the business to Mitchell’s, which is the first name of one of the partners of the defendant partnership, and continued operations in the same location. It conducted, as Mitchell’s, a sale of the shoes still on hand and of similar merchandise brought in from other stores which it operated in different parts of Louisiana. The stock thus offered was described by a defense witness as “all odds and ends we had.”
 

 Although no new fall shoes were displayed at Mitchell’s sale, the following was stated in an advertisement in a Shreveport paper:
 

 “Important Announcement! Mitchell’s Shoe Store. Now open in Newstadt’s old location. 425 Milam St. Next to Selber’s. We have acquired Newstadt’s entire remaining stock of spring and summer shoes
 
 *323
 
 * * * and are grouping them with new fall shoes that have just arrived! ”
 

 Defendant’s sale conducted as Mitchell’s ceased on October 25, 1938; and at the same time the store was closed, all of the “odds and ends” having then been disposed of. But the keys to the premises were not surrendered to plaintiff until the expiration of the lease on December 31, 1938.
 

 In the meanwhile, on September 10, 1938, defendant opened its store at the new location under the name of Newstadt’s, and commenced its regular business with all new fall merchandise, including that previously stored in plaintiff’s premises. This coincided with the termination of Newstadt’s removal sale in the old location and the change in name to Mitchell’s. Such regular business was conducted successfully throughout the remainder of the year.
 

 For the months of September, October, November, and December, 1938, plaintiff received from defendant a total of $800, being the minimum rental of $200 per month stipulated to be paid for the old premises during that period. According to defense counsel, such was all that was due by defendant “because the sales were not sufficient to require the payment of a sum on a percentage basis.”
 

 Countering, attorneys for’ plaintiff call attention to the fact that for the same four months of 1937 there was a total rental .paid of $2,059.36; and they argue: “Had defendants continued to conduct their business in the leased premises in the manner contemplated, it is apparent that plaintiff would have received rentals for the last four months of 1938 at least equal to the amount of rentals paid during the corresponding months of 1937, or $2,059.36. Having received only $800 for these four months, it is entitled to recover either as additional rental or as damages for breach of contract, a difference of $1,259.36.”
 

 As shown above, defendant was required to conduct its operations in plaintiff’s premises for the mutual benefit of the parties to' the contract, and in a manner consistent with good business principles, in order that its lessor would realize the largest possible amount of rent over and above the stipulated minimum of $200 per month. The implied obligation of the lease demanded this; and plaintiff was entitled to and did rely on a performance of.that kind. Of course, it was not encumbent upon defendant to suffer a large financial loss, if such would result by continuous and regular operations in the premises until the expiration of the lease, merely for the sake of providing plaintiff with its customary rentals. But, according to our appreciation of the evidence, no such loss would have been so occasioned.
 

 Defendant could and should have held in plaintiff’s premises during the months of June and July a regular clearance sale of its summer merchandise, as was customarily done, thereby making ready for displaying the new fall shoes. These then could have been offered and regularly sold until becoming unseasonable about November 1, at which time a removal sale, involving them’ and all “odds and ends”, would have been appropriate and in order. A removal sale, if then begun, could have been finished
 
 *325
 
 prior to the expiration of the lease, considering that a similar sale actually held in August and September consumed less than one and one-half months. Then with neither stock nor fixtures to move, the fixtures in the premises having belonged to plaintiff, the new store could have been opened on the first day of January, 1939, with merchandise for the early spring season.
 

 Defendant offered a witness who testified that according to custom and good business a removal sale of shoes should be commenced at least in August when the lease is to expire the following December 31st, the reason for this being that the amount of time required to dispose of the stock cannot be predicted. This testimony might be of some value in connection with leases stipulating only a flat monthly rental and where fixtures are to be moved. It does not appear, however, that the custom is or could be applicable to a situation such as is here presented, particularly since the solemn contract calls for a rental based on a percentage of the gross sales and demands that the business be conducted for the mutual benefit of the parties until the lease’s expiration.
 

 Therefore, we are of the opinion that plaintiff is entitled to be paid additional rental for the four months in question, unless defendant’s plea of estoppel is meritorious.
 

 The damage claim of $1,000, according to the brief of plaintiff’s counsel, is “for impairment of rental value of ’ e leased premises by reason of defendant conducting the business of ‘Mitchell’s’ thereon for the willful purpose of deteriorating the use of it for a first class shoe store.” This item is not supported by the evidence, and it is disallowed.
 

 Under the plea of estoppel, sustained by the trial judge, defendant contends that the acceptance by plaintiff of the minimum rental of $200 for each of the months of September, October, November, and December, 1938, prevents a recovery of the additional rent. This is so, defense counsel says, because at that time a serious dispute existed between the parties as to whether plaintiff was entitled only to the minimum rental or to the average rental as had been previously paid.
 

 The facts surrounding such acceptance are that during the early part of September defendant paid to plaintiff the sum of $443.67, being the September minimum rental plus the excess' rental for August. The minimum rentals were always payable in advance, while the additional or excess rentals were paid on the expiration of the month for which due, as they were based on gross sales made.
 

 About the fifth day of October, 1938, plaintiff received from defendant two checks totaling $200. Immediately its attorneys wrote defendant demanding payment of the additional rent for September. Also on or about that same day one of them telephoned defendant’s attorney requesting -that the excess be paid, and received the reply that the amount delivered, or $200, was all that plaintiff was entitled to receive, “all we were going to- pay.” In other words, the attorney for plaintiff was contending for more than the minimum
 
 *327
 
 rent which had been received, while the other disputed the claim. The former then said that he would hold the checks; but about fifteen days later they were cashed. At no time during that conversation was there a mutual understanding between the attorneys that if the checks were accepted by plaintiff its claim would be deemed to have been paid in full.
 

 In November and December plaintiff received checks covering only the minimum rental for those respective months. And on November 15, 1938, plaintiff's attorneys addressed the following letter to defendant:
 

 “Selber Bros. Inc., request us to direct your attention to the fact that although you have paid the stated rental in your lease contract with them to date, you have not made payment of the excess which would have been'earned had you continued to operate your business originally established therein. They also wish us to request you to make remittance for such excess. The amount of the monthly excess has heretofore been communicated to you in their letters.”
 

 Estoppel, as a general rule, is effective only when it appears that the person pleading it has been misled to his injury by acts of omission or commission of him who is sought to be estopped; and it is not favored in law and should not be maintained except in clear cases. Louisiana Oil Refining Corporation v. Williams et al., 170 La. 218, 127 So. 606; Tyler v. Walt et al., 184 La. 659, 167 So. 182; Succession of Butterworth, 195 La. 115, 196 So. 39.
 

 In the instant case, the cashing of the checks, representing the minimum rental for the mentioned four months’ period, was in no manner misleading and prejudicial to defendant. There was nothing to prompt a belief by the latter that the rent dispute had been terminated and to cause it to assume a position inimical to its best interests. To the contrary, defendant was repeatedly informed and knew all along that plaintiff was claiming rental in addition to the minimum payments.
 

 But defendant urges, under the discussed special plea, that the acceptance of the minimum amounts resulted in what is termed an accord and satisfaction and that plaintiff is now estopped to collect the excess rental. In support of that position it cites and relies on Meyer v. Acme. Homestead Association, 18 La.App. 697, 138 So. 443, and Berger v. Quintero, 170 La. 37, 38, 127 So. 356. In each of those cases, as we appreciate the facts thereof, there accompanied the delivered check a written declaration of the obligor that the payment constituted full settlement of the balance of the indebtedness, thus implying that its acceptance would entirely discharge the obligation; and the court held that by accepting the check the creditor was estopped to recover more.
 

 In the controversy now before us, it does not appear that the payments were tendered upon a condition, expressed or implied, that the indebtedness would be fully satisfied if they were accepted. There was nothing in writing, either on the checks or otherwise, to indicate the existence of a condition of that kind; neither does the
 
 *329
 
 evidence show that the parties understood or intended that the discharge of all liabilities would result from the acceptance. Instead we find that there was complete agreement as to the obligation for payment of the minimum rentals at their respective maturity dates; while a dispute existed concerning only the matter of whether or not the additional rentals should be paid, defendant taking the position that it would pay no more as none were owing and plaintiff repeatedly claiming them. In this connection, it is well to, again mention that such dispute was revealed in a conversation had between the attorneys of the litigants on or about October 5, 1938, when the minimum rent for October was paid. Defendant made no mention of it, however, at the time of paying the minimum rental for each of the succeeding two months.
 

 Under the circumstances shown above, plaintiff, we think, is not estopped by its described actions. To use the language of the court in American Forwarding & Mercantile Co. v. Lindsay Chair Co., 129 Ill.App. 548: “It is one thing to inform a creditor when sending a check that the debtor will not pay any more and a very different thing to advise him that the check is sent upon condition that if he accepts it, he will do so in full settlement of the account.”
 

 It is stated in a letter addressed to defendant by plaintiff’s counsel of date October 6, 1938, and further shown by other evidence in the record, that the average rental previous to that time amounted to $446.30 per month. On this basis plaintiff should recover for the four months of September, October, November, and December, 1938, less a credit for the total minimum rental already paid of $800. Furthermore, it is entitled to receive six per cent per annum interest on the amount due, plus ten per cent additional as attorney’s fees, under the terms of the written contract of lease.
 

 For the reasons assigned the judgment of the district court is reversed and set aside and the plea of estoppel is overruled; and there is now judgment in favor of plaintiff and against defendant for the full sum of $985.20, together with'six per cent per annum interest thereon from January 1, 1939, until paid, and ten per cent additional upon said principal and interest as attorney’s fees. Defendant shall pay all costs of both courts.
 

 ODOM, J., absent.