375 So.2d 683 (1979)
James H. WILSON, Plaintiff-Appellant,
v.
COST + PLUS OF VIVIAN, INC., UDS, Inc. and B. J. Tanenbaum, Jr., Defendants-Appellees.
No. 13873.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1979.
*684 Booth, Lockard, Jack, Pleasant & LeSage by John R. D'Anna, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King by John D. Collinsworth and Dewey W. Corley, Shreveport, for defendants-appellees.
Before HALL, MARVIN and JONES, JJ.
HALL, Judge.
Plaintiff-lessor appeals from a judgment sustaining defendants-lessees' exception of no cause of action addressed to plaintiff's petition requesting lease cancellation for lessees' violation of an alleged obligation of the lease to conduct continuous commercial operations on the premises. We affirm the judgment of the district court dismissing plaintiff's suit.
The issue on appeal is whether the provisions of the lease or of the law expressly or impliedly require continuous commercial operations on the premises, giving rise to a cause of action for lease cancellation where the lessee has allowed the premises to be vacant for a period of time.
Plaintiff, James H. Wilson, filed suit against defendants, Cost+ Plus of Vivian, Inc., UDS, Inc. and B. J. Tanenbaum, Jr., in February 1978. The petition alleged that plaintiff entered into a lease of property with Cost+ Plus on February 18, 1974. The written lease was attached to and made a part of the petition. It affects an approximately one acre tract of land on Spruce Street in Vivian, Louisiana. The lease is for a primary term of ten years beginning February 1, 1974 and ending January 31, 1984. The rental during the primary term is $325 per month. Lessee is also required to pay all occupational licenses, insurance, and other permits and fees necessary in the operation of the business to be carried on in the leased premises; all utility services; and all sales, use, income or other taxes due as a result of the business conducted on the premises. Lessee agreed to erect on the leased premises a first-class modern retail building and to maintain it in good repair. Lessee agreed and warranted that the leased premises and building to be erected thereon will be used solely to conduct a retail store business or for such other commercial purposes as lessee may desire, provided that lessee shall not use the premises for any unlawful business or purpose. Upon termination of the lease, if the lessee is not in default, the building is to become the property of the lessor upon payment of $1. Upon termination as a result of default by lessee, no payment is required. The lease may not be transferred or assigned by lessee without lessor's written consent. Lessee is granted the option to renew the lease for an additional term of five years at a monthly rental of $1,650, plus an additional rental contingent on gross sales. Lessee is granted an additional option to renew the lease for an additional five-year term at the same rental. Upon default by lessee, lessor is given the right to declare all unmatured rent due or to cancel the lease.
Plaintiff's original petition alleged breach of the lease provisions by (1) assignment of the lease from Cost+ Plus to UDS, Inc.;
(2) the filing of a Chapter XI bankruptcy proceeding by UDS in November 1976; and
(3) nonpayment of rent for the month of February 1978. The petition prayed for (1) cancellation of the lease; (2) $325 for one month's past due rent; and (3) that plaintiff be declared the owner of the building constructed on the leased premises.
In August 1978, after exceptions were filed by defendants relating to the bankruptcy proceedings, plaintiff filed two amended petitions, alleging that a final decree was rendered in the bankruptcy proceeding on April 7, 1978, and withdrawing the allegations of the original petition asserting insolvency and transfer without *685 consent as grounds for cancellation. Plaintiff alleged as additional grounds for cancellation failure of the lessor to comply with Article VIII of the lease, "specifically, that defendants have permitted and caused the premises to be vacant since November 1977 and have not operated a retail or commercial establishment therein."
Defendants filed various exceptions, including a peremptory exception of no cause of action asserting that the allegations of the petition did not show a breach of the lease provisions.
After hearing on the exceptions, Cost + Plus, which had merged into UDS, was dismissed from the suit. The remaining defendants' exception of no cause of action was sustained by judgment signed in December 1978 and this appeal followed. Plaintiff apparently abandoned in the trial court his claim for cancellation on the grounds of failure to timely make rental payments and does not urge that claim on appeal. The sole issue on appeal is whether plaintiff's allegations that defendants have permitted the premises to be vacant and have not operated a retail or commercial establishment thereon since November 1977, states a cause of action for cancellation of the lease under the lease provisions or applicable law of lease.
In Louisiana, liberal rules of pleadings prevail, and the court should maintain a petition so as to afford the litigant an opportunity to present his evidence when it can reasonably do so. Haskins v. Clary, 346 So.2d 193 (La.1977); Pence v. Ketchum, 326 So.2d 831 (La.1976). The peremptory exception of no cause of action tests the legal sufficiency of the petition and is triable on the face of the papers, which in this case include the written lease between the parties attached to and made a part of plaintiff's petition. Haskins, supra. It is well settled that for purposes of determining the merit of the no cause exception all allegations of fact are taken as true. Haskins, supra; Pence, supra; Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975). However, plaintiff's conclusionary allegations are not taken as true. See Lott v. Haley, 370 So.2d 521 (La.1979).
The only pertinent facts alleged in plaintiff's petition are the lease and its provisions and the vacancy and failure to conduct retail or commercial operations since November 1977. Plaintiff contends his allegation that Article VIII of the lease requires continuous operations making the vacancy a breach of the lease is an allegation of fact which must be taken as true. Plaintiff also terms defendants' contention that the lease does not require continuous operations an "interpretation". This statement reflects the true nature of both parties' contentions in this respect. They are both interpretations of the lease and as such they are conclusions of law which are not considered as true in ruling on the no cause of action exception. It is the function of the court, in ruling on an exception of no cause of action, to interpret the law in light of the facts alleged. When a contract is subject to interpretation from the four corners of the instrument, without necessity of extrinsic evidence, interpretation of the contract is a matter of law. Thus, the issue is whether plaintiff, by alleging that defendants have allowed or caused the leased premises to remain vacant, has stated a cause of action to cancel the lease under the applicable law.
The applicable law is (1) the lease provisions which are law between the parties, LSA-C.C. Art. 1901; and (2) any obligations provided by the law of lease which are not consistent with the lease provisions.
Plaintiff contends that Article VIII of the lease, particularly when read with other provisions of the lease referring to business activities to be carried on in the leased premises, requires the lessee to conduct continuous business operations on the premises. Plaintiff further contends that even if the lease provisions do not require continuous operations such is required under LSA-C.C. Arts. 2710 and 2711.
Article VIII of the lease provides:
"Lessee agrees and warrants that the leased premises, the buildings and improvements to be erected thereon will be used solely to conduct a retail store business *686 in and upon the said premises or for such other commercial purposes as Lessee may desire, provided, however, Lessee shall not use said premises, nor permit the same to be used for any unlawful business or purpose whatsoever."
The lease does not expressly require continuous occupancy nor does it expressly provide for cancellation in the event the premises are allowed to remain vacant. Article VIII is a limitation on the type of activity which the lessee may conduct on the premises and is not an affirmative obligation to continuously conduct a retail store business or other commercial activity. The parties obviously contemplated that a retail or other commercial business be conducted on the premises, but the continuous conduct of such business was not made a requirement of the lease, violation of which would make the lease subject to cancellation. The lease is thorough, comprehensive and well-drafted. If any such express requirement or obligation on the part of the lessee had been intended it would have been included. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La.1979); Mancuso v. Sigmor Distributing Serv. Inc., 356 So.2d 1035 (La. App. 1st Cir. 1977); Riverside Rlty. Co. v. National Food Stores of La., Inc., 174 So.2d 229 (La.App. 4th Cir. 1965), cert. den. 247 La. 1037, 175 So.2d 647 (1965). At best from the lessor's standpoint, it might be argued that the lease is ambiguous in this respect. Dissolution of leases is not favored and any ambiguity is to be construed against the lessor and in favor of the lessee and maintenance of the lease. Tullier, supra.
No implied obligation to continuously occupy the premises can be drawn from Article VIII or the other provisions of the lease. The court would be unwarranted in writing such a provision into the contract between the parties. The court would be unwarranted in considering extrinsic evidence of the intention of the parties in this respect beyond the written agreement between the parties. Therefore, as a matter of law it can be and is held that the provisions of the lease contract do not require continuous occupancy and do not give the lessor the right of cancellation because the premises are allowed to be vacant for a period of time. The allegation that the premises have been vacant since November 1977, in and of itself, without more, states no cause of action for cancellation under the terms of the lease.
Implied in every contract, however, is the obligation of good faith performance. Waseco Chemical & Supply Company v. Bayou State Oil Corporation, 371 So.2d 305 (La.App. 2d Cir. 1979). As to leases specifically, the Civil Code provides in Article 2710:
"The lessee is bound:
"1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.. . ."
Article 2711 further provides:
"If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease. . . ."
There have been some Louisiana cases ordering cancellation of leases or awarding damages for failure of the lessee to use the leased premises for the purpose intended by the lease. See Rials v. Davis, 212 La. 161, 31 So.2d 726 (1947); Selber Bros. v. Newstadt's Shoe Stores, 194 La. 654, 194 So. 579 (1940) and 203 La. 316, 14 So.2d 10 (1943); Slidell Investment Co. v. City Products Corp., 202 So.2d 323 (La.App. 1st Cir. 1967). Other cases have denied cancellation and damages. See Tullier and Riverside, supra. An excellent annotation on the subject appears in 40 A.L.R.3d 971, "Lease of Store as Requiring Active Operation of Store." In the absence of an express lease provision requiring continuous occupancy, relief is consistently denied to the lessor absent a showing of bad faith on the part of the lessee and a showing of loss or damage to the lessor. Loss to the lessor has been established by showing a loss of contingent rental or economic loss where the leased property is part of a shopping center owned by the lessor. Bad faith has been established *687 where the lessee moves the business to another location for his own economic advantage to the detriment of the lessor. However, most of the cases held that even where the lease provides for a contingent rental, a lessee is not required to continue to operate a business in the leased premises at a loss. See Tullier, Riverside and Selber Bros., supra.
The petition in this case, as amended twice, contains no allegations of fact bearing on either bad faith of the lessee or loss or damage to the lessor. The mere allegation of vacancy for a relatively brief period of time (three months when suit was filed) creates no inference of bad faith. The lease in this case does not provide for a contingent rental during the ten-year primary term. Neither the allegations of the petition nor the provisions of the lease show any economic interest of the lessor in whether the premises are occupied or vacant during the primary term. While plaintiff urges that the case should be tried on its merits, plaintiff has not alleged or mentioned in brief any facts which would be established at such a trial bearing on bad faith of the lessee or damage to the lessor. Under LSA-C.C.P. Art. 934, where the deficiency in the petition can be cured by amendment, plaintiff should be given an opportunity to amend. However, there has been no suggestion in this case that there are additional facts which can be alleged which would state a cause of action for cancellation under the applicable principles of law as reviewed above. The dissolution of a lease is subject to judicial control and will be decreed only when the lessor is clearly entitled to it. Tullier, supra; Vidrine v. Morein, 360 So.2d 659 (La.App. 3d Cir. 1978). We, therefore, do not consider this an appropriate case for remand in order to give the plaintiff an opportunity to amend.
The judgment of the district court sustaining defendants' exception of no cause of action and dismissing plaintiff's petition is affirmed, at appellant's costs.
Affirmed.