410 So.2d 808 (1982)
Michael M. WAHLDER, Plaintiff-Appellant,
v.
Richard H. OSBORNE, Defendant-Appellee.
No. 8638.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearing Denied March 23, 1982.
Michael M. Wahlder, Garrett & Ryland, B. Dexter Ryland, Alexandria, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, F. A. Little, Jr., Alexandria, for defendant-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
SWIFT, Judge.
In this proceeding plaintiff-lessor, Michael Wahlder, is attempting to evict defendant-lessee, Richard H. Osborne, from property owned by the plaintiff in Alexandria. From the trial court's judgment refusing to cancel the lease, the plaintiff appeals.
On May 22, 1972, the plaintiff granted a lease to the defendant to operate a filling station which contained the following relevant provisions:
"Lessee shall pay as rent for the leased premises for each calendar month during the term of this lease, in cash or by check to the order of `Mike Wahlder,' and mail same to `Mike Wahlder', P. O. Box 1787, Alexandria, Louisiana 71301.
"A. The sum of $50.00 on or before the 1st day of each month.
"B. An additional sum equal to 1½¢ for each gallon in excess of 3333 gallons of gasoline and diesel oil sold on the premises during each month as shown by Lessee's records, payable on or before the 15th day of the following calendar month.
"C. An additional sum of 5% of the gross sales, cash and on credit, sold on the leased premises during each month as *809 shown by Lessee's records, excepting only gasoline and diesel oil, payable on or before the 15th day of the following calendar month.
"In connection with the operation of the service station it is expressly stipulated that lessor will receive 5% of the gross sales, cash and on credit, of all tires, but minor accessories such as batteries, headlights, lubricating oil and greases, etc., are excluded."
* * * * * *
"The leased premises can be sublet and this lease can be assigned or transferred only with written consent of Lessor first obtained. In event of sublease, assignment or transfer of the lease with the consent of Lessor, Lessee will continue to be liable for the consideration, terms and conditions of this lease. It is understood that in all events the leased premises are to be used for the sale of gasoline, motor oils, lubricants and other motor vehicle products unless written consent of Lessor is obtained to use the premises for other purposes."
* * * * * *
"Lessee agrees to remain open and carry on business seven (7) days per week for at least fourteen (14) hours per dayat least eight (8) of said 14 hours during daylight."
The defendant incorporated his business under the name of R. H. Osborne, Inc. The inventory was owned and the salaries of employees were paid by the corporation. However, the lease was never transferred to the corporation.
During the first two months of business the station sold various automotive products, including tires. Shortly thereafter the sale of tires was discontinued and eventually the defendant opened another store which sold tires and accessories exclusively. This store, The Tire Hut, was located approximately three miles from the gas station. No one at the filling station on the leased premises has directed any prospective tire purchaser to The Tire Hut.
During the summer of 1979 a Presidential Proclamation requested gas stations to close on Sundays because of a gas shortage. The defendant closed the service station on four or five Sundays during this period. The defendant also allowed the station to close early on certain holidays, such as Christmas, New Year's and Thanksgiving. On these occasions it was not open for 14 hours each day as provided by the lease.
On October 27, 1980, and January 12, 1981, the plaintiff sent the defendant letters stating several violations of the lease and notifying the latter that the plaintiff considered the lease cancelled.
On January 29, 1981, the plaintiff filed a rule to evict the defendant from the premises. This petition and subsequent amended petitions alleged the defendant breached the lease in the following respects:
1) In failing to stay open 7 days a week, 14 hours a day;
2) By transferring the lease to R. H. Osborne, Inc., without obtaining the written consent of plaintiff;
3) In using the leased premises to sell tires for The Tire Hut and in failing to give plaintiff five per cent of the sales of these tires; and
4) By breaching a subsequent verbal agreement which required defendant to sell tires at the station.
The trial judge found that the defendant failed to stay open seven days a week, 14 hours a day, as required by the lease on certain holidays and during the gas shortage after the station's allocation of gasoline had been sold. However, he felt such breaches were insubstantial. Since they were not committed in bad faith, the judge declined to cancel the lease for equitable reasons under the doctrine of judicial control. Farmers Gas Company v. LaHaye, 195 So.2d 329 (La.App. 3 Cir. 1967). The court also found that the lease had not been transferred by defendant to R. H. Osborne, Inc. and denied cancellation of the lease and eviction for this alleged breach. The plaintiff has not complained of these rulings by the district court and we assume they are not at issue before us.
*810 The trial court denied the plaintiff's offering of parol evidence to prove the existence and content of an alleged verbal agreement between the parties requiring the defendant to sell tires at the station. It determined that the lease is unambiguous in this respect and does not obligate the defendant to sell tires, but merely requires him to give the plaintiff five per cent of the gross sales of such items if the defendant decides to sell same. For these reasons the trial court denied the termination of the lease on this ground. From this part of the judgment the plaintiff has appealed, specifying that the trial court erred: 1) In failing to allow parol evidence to determine and clarify ambiguities in the lease, the intent of the parties and subsequent modifications of the lease: and 2) In holding the defendant had no explicit or implied obligation to sell tires and that the plaintiff was not entitled to a five per cent rent on the sale of all tires sold by defendant at The Tire Hut.
A contract of lease is not required by law to be in writing. La.C.C. Article 2683. Therefore, parol evidence is admissible to prove the written lease was modified, altered, or abrogated by a subsequent agreement. But where such agreement was antecedent or contemporaneous with the written agreement it cannot be established by parol evidence. Wahlder v. Tiger Stop, Inc., 391 So.2d 535 (La.App. 3 Cir. 1980), writ denied 396 So.2d 1351 (La.1981); and Mott v. Phillips, 372 So.2d 223 (La.App. 3 Cir. 1979). In Mott, however, this court pointed out that as between the parties to the written instrument, parol evidence is competent to explain an ambiguity when such explanation is not inconsistent with the written terms of the agreement.
In the instant suit we are unable to agree with the trial judge's conclusion that the terms of the lease are clear and unambiguous in regard to whether or not the lessee is bound to sell tires at the station. However, from our review of the record, as well as the evidence on the subject which was proffered, we agree with the court that the defendant is not obligated to do so.
Paragraphs A, B and C of the lease provisions quoted above set forth the lease rental. Paragraph C simply provides for payment of five per cent of the gross sales on the premises, excepting gasoline and diesel oil. It does not mention tires. The following paragraph does say that the lessor will receive five per cent of the gross sales of tires. However, nowhere in the lease is there any provision expressly obligating the lessee to sell any tires at the station.
In his offer of proof the plaintiff testified that prior to, at the time the lease was executed and subsequently the parties agreed that after he had completed blacktopping the area the defendant would have to carry tires. On the other hand, Mr. Osborne emphatically denied he ever agreed that he was obligated to stock and sell tires on the leased premises. The defendant said their agreement was simply that if he sold tires at the station the plaintiff would receive five per cent of the gross sales thereof. Although a few tires were sold when the station was first opened, more tires were stolen than were sold because he did not have the facilities to secure them properly. Consequently, the sale thereof was discontinued. There is no indication of bad faith on the part of the defendant.
Thus, in the present case neither the lease nor the testimony of the parties clarify their intention as to whether or not the defendant is obliged by their contract to sell tires.
In Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App. 2 Cir. 1979), the court said:
"At best from the lessor's standpoint, it might be argued that the lease is ambiguous in this respect. Dissolution of leases is not favored and any ambiguity is to be construed against the lessor and in favor of the lessee and maintenance of the lease."
Article 1956 of our civil code provides:
"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by *811 both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."
The record reflects that no tires have been sold by the filling station on the leased premises for over nine years. It was not shown that the plaintiff complained thereof until recently. We are convinced that if the parties really intended the lessee was obligated by the lease to stock and sell tires the lessor would have taken steps to enforce such obligation long ago. Therefore, our conclusion is that there is no such obligation under the lease involved in this case.
For the foregoing reasons, the judgment of the district court is affirmed at plaintiff-appellant's costs.
AFFIRMED.