**CASCADE DRIVE LIMITED PARTNERSHIP**

v.

**WAL–MART STORES, INC.**

**Civ. A. No. 90–1302.**

United States District Court, E.D. Louisiana.

Sept. 26, 1990.

**ORDER AND REASONS**

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant's motion for summary judgment on the issue of the lack of any obligation of continuous operation on the part of Wal–Mart for the remaining term of its lease at plaintiff's Houma Shopping Center. Wal–Mart is still operating on plaintiff's premises but has indicated an intention to relocate to another nearby shopping center, and plaintiff filed a complaint on April 9, 1990 seeking specific performance and injunctive relief. Plaintiff amended its complaint on July 9, 1990 to add a claim for $4 million in anticipated damages should defendant cease its operations. Plaintiff's motion for injunctive relief was set for hearing October 5, 1990, and defendant Wal–Mart moves now for summary judgment on the terms of the lease itself.

Wal–Mart took over leased spaced formerly occupied by Woolco at plaintiff's

---

shopping center, where it is now the anchor tenant, entering into a fifty-year lease agreement on December 22, 1982.[1] The Cascade/Wal–Mart lease provides for base rent of $3.00 per square foot plus 1% percentage rent on sales in excess of $11 million per year. Paragraph 6 of the lease specifically provides, "[I]t is understood and agreed that the Demised Premises being leased will be used by the Lessee in the operation of a discount department store, but lessor agrees the store may be used for any lawful retail purpose except for a theatre or prescription pharmacy." Paragraph 16 of the lease specifically provides that Wal–Mart "... have the right at any time to sublet the Demised Premises, or any part thereof, or to assign this lease, providing that no such subletting or assignment shall relieve the Lessee of any of its obligations hereunder. Any assignment or subletting of a majority of the Demised Premises by Lessee shall be subject to Lessor's prior written consent. Should consent be denied by Lessor, then Lessee may at Lessee's option, terminate this lease upon ninety (90) days prior written notice to Lessor ..."

Plaintiff claims that the provisions for "percentage rent" on sales in excess of $11 million (beyond the base rent of $3.00 per sq. ft.) contradict the meaning of Paragraphs 6 and 16 and give rise to an implied obligation on the part of Wal–Mart to continuously operate on the premises. The Court disagrees. Interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code § 2045 (West 1987). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, La.Civ.Code § 2046 (West 1987), and the words of a contract must be given their generally prevailing meaning. La.Civ.Code § 2047 (West 1987); *Diefenthal v. Longue Vue Mgmt. Corp.*, 561 So.2d 44, 51 (La. 1990). The Court finds no language in the lease specifying "continuous operation" of the premises by Wal–Mart, and Paragraphs 6 and 16 are not contradicted by additional provisions in the lease.

Plaintiff cites *Selber Bros., Inc. v. Newstadt's Shoe Stores et al*, 203 La. 316, 14 So.2d 10 (1943), in support of its claim, noting that this case has never been specifically overruled, but the Court finds *Selber Bros.* and its progeny wholly distinguishable from the instant case. The lease in *Selber Bros.* involved a renewed, year-to-year rental at a base rent plus percentage rent on sales. When the lessee in *Selber Bros.* was unsuccessful in securing a second renewal of his lease (for a third year on the premises), he made lease arrangements elsewhere and changed his customary retail practices at Selber Bros.' location for the remaining four months of his lease, resulting in greatly diminished sales at that location. *Id.* 14 So.2d at 11–12. The distinguishing features in *Selber Bros.* were the stipulated one-year lease periods, that the lease did not provide for sublet or assignment of the leasehold interest, and that the claim for damages involved bad faith in lessee's performance during the last four months of the lease period. The subsequent case of *Rials v. Davis*, 212 La. 161, 31 So.2d 726 (1947), is also distinguishable from the instant case in that *Rials* also involved a year-to-year lease without provisions for sublet or assignment, a non-compete clause from the lessor, and subsequent bad faith operation of the premises by the lessee. *Id.* 31 So.2d at 727. The evolution of these cases is complete in *Riverside Realty Company, Inc. v. National Food Stores of Louisiana, Inc.*, 174 So.2d 229 (La.App. 4th Cir.1965), *writ refused*, (La.1965), where the court found the concept of an implied obligation of continuous operation in a lease containing a percentage rent provision wholly negated by the presence of a sublet clause in the lease itself. *Id.* at 231–32. Plaintiff's further reliance on *Slidell Investment Co. v. City Products Corp.*, 202 So.2d 323 (La.App. 1st Cir.1967), is also misplaced. The lease in *Slidell* contained no provision for sublet or assignment, and the court in *Slidell* found an implied obligation of continuous opera-

---

**1.** The term of this lease was amended by the parties on April 13, 1983 to a renewable term of fifteen years. The current lease expires on May 16, 1998.

**358**

tion for the 10-year term of the lease because the defendant had been a participant in the construction of plaintiff's store building (built for the defendant), and defendant had a policy of taking leases in its name and then subletting to one of its subsidiaries. *Id.* at 325. No such factual history warranting equitable intervention by the Court exists in the instant case, and the lease in this case specifically provides for the sublet or assignment of the premises, which clearly precludes an implied obligation of continuous operation.

Plaintiff has asserted the existence of contested issues of fact effecting the making of this lease, but the Court finds no material issue of fact outstanding, only the questions of law effecting this lease. Ambiguities in a lease contract are to be construed against the lessor, *Tullier v. Tanson Enterprises, Inc.*, 367 So.2d 773, 778 (La.1979), even where the lease language has been provided by the lessee. *Coxe v. F.W. Woolworth Co.*, 652 F.Supp. 64, 65, 69 (M.D.La.1986), citing *Tullier*. While most of the lease language in this case was provided by lessee, the Court finds the language unambiguous in its provisions for sublet and assignment of the leasehold interest, and the parties to this transaction were of equal bargaining power and sophistication.[2]

But most important, the lease language clearly provides that Wal-Mart be allowed to operate the premises for any lawful retail purpose, except as a theatre or prescription pharmacy, *and that Wal-Mart be allowed to sublet or assign its leasehold.* The Court finds, and it is an inescapable conclusion that, this contract language is expressly inconsistent with "an implied obligation of continuous operation." Contracts are not to be rewritten except upon clear and convincing proof that there was an agreement which, by mutual mistake, was not carried into the written contract. *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir.1977).

Accordingly, defendant's motion for summary judgment on the issue of the lack of any obligation of continuous operation on the part of Wal-Mart is hereby GRANTED, and plaintiff's complaint and motions for preliminary and permanent injunction are thereby DISMISSED and DENIED, respectively. The granting of this motion disposes of this case and the clerk of court is directed to enter a judgment dismissing plaintiff's claim.

---

**2.** While parol evidence is admissible to clarify ambiguities and show the intent of the parties, *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087, 1089 (La.1981), the testimony in this matter revealed that the custom and usage of developer/lessors is to *not* attempt to place "continuous operation" clauses in leases for large retailers (usually provided by these lessees), because these clauses are considered universally unacceptable to these large retailers.