479 So.2d 421 (1985)
OCEANEERING INTERNATIONAL, INC.
v.
BLACK TOWING, INC., Cheramie Towing Corporation and Northeastern Fire Insurance Co. of Pennsylvania.
No. CA 84 0885.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied December 26, 1985.
*422 Kenneth W. Ford, Lafayette, for plaintiff-second-appellant.
Winston Edward Rice, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for Black Towing, Inc., defendant-appellee.
Michael J. Maginnis, McGlinchey, Stafford & Mintz & Cellini, New Orleans, for Cheramie Towing Corp., Northeastern Fire Ins. Co. of Penn. and Arkwright-Boston Manufacturers Mut. Ins. Co., defendants-first-appellants.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
This appeal arises out of the trial court's determination that Cheramie Towing Corporation (hereinafter referred to as Cheramie) was liable for damages sustained by plaintiff, Oceaneering International, Inc. (hereinafter referred to as Oceaneering).
On August 13, 1979, Oceaneering signed a Time Charter contract with Black Towing, Inc. (hereinafter referred to as Black) for the lease of vessels to use in laying underwater pipeline in completion of Oceaneering's contract with Transcontinental Gas Pipeline Company.[1] Subsequently, Oceaneering, contacted Black to request an additional vessel. Per request, Black supplied to Oceaneering a vessel named the M/V MISS SHELLY. Said vessel was owned by TKO, Inc. (hereinafter referred to as TKO) and operated by Cheramie. On November 5, 1979, the M/V MISS SHELLY, while operating on the job, struck an underwater pipeline causing damage. This suit is the result thereof.
On June 18, 1980, Oceaneering filed suit against Cheramie and its insurers[2], alleging certain acts of negligence were committed by Cheramie. Also named therein were Black and its insurers[3]. Black subsequently filed a third-party demand against Cheramie and TKO and its insurers[4]. Prior to trial, all excess insurers of Black and Cheramie were dismissed with prejudice by Oceaneering.[5]
The trial court found that at the time of the accident, the M/V MISS SHELLY was owned by TKO and being operated by Cheramie's employees. By stipulation, counsel agreed that the M/V MISS SHELLY had in fact hit the pipeline. Finding that such collision caused the damage claimed, the court found Cheramie liable therefore. Having so found, the trial court determined that Black was not liable in tort for the damages sustained.
In considering Black's possible contractual liability, the court concluded that the Time Charter contract between Oceaneering and Black did not cover the use of the M/V MISS SHELLY. Accordingly, the trial court found Black not liable. Having determined liability, the court then considered quantum.
The trial court noted that Oceaneering made claim for repairs which occurred during the period November 21-25, 1979. However, Cheramie's daily logs of equipment use and manpower documentation noted repair work was done only during November 22-24, 1979. Based thereon, the court disallowed any reimbursement for repairs claimed on November 21 or November 25, 1979. The court then considered *423 three particular claimed costs: fuel, food and lodging, and equipment and labor.
In considering fuel costs attributable to the repair, Oceaneering claimed for the use of three vessels, namely the M/V MISS JANET, the M/V MISS BOBBY MAY, and the M/V MR. BUD. Further, it asserted its right to a 15% profit margin associated therewith. The trial court disallowed such profit. Accordingly, the per day fuel costs were reduced to $7,556.98 each for the M/V MISS JANET and M/V MISS BOBBY MAY. Per day fuel cost for the M/V MR. BUD was reduced to $6,927.23. The bill for food and lodging for certain personnel was set at $673.20. Lastly, the court considered equipment and labor costs. It noted that Oceaneering was attempting to claim for equipment rates at nearly twice the amount which it was paying under the Time Charter. As such, the three day charge for equipment and labor was reduced to $78,001.42.
Cheramie contends that the trial court erred in assessing the quantum of damages sustained. Oceaneering also appeals, contending that the trial court erred in finding that the Time Charter contract was inapplicable to Oceaneering's use of the M/V MISS SHELLY.

QUANTUM
In considering any award for damages, it is well settled that absent a clear abuse of the trial court's discretion in awarding same, such award will not be disturbed. Jones v. Soileau, 448 So.2d 1268 (La.1984).
In the matter sub judice, Cheramie contends that the trial court abused its discretion in awarding the damages herein. Specifically it complains that evidence of the cost and time required to repair a 40 foot section of similar pipeline dictates that the cost and time required to repair the two (2') foot section herein is excessive. The record is devoid of any such substantiation. Cheramie failed to produce any evidence that these two repairs were so similar as to require a similar cost analysis. Further, Cheramie failed to produce any evidence substantiating that Oceaneering did not expend the costs claimed for the instant repair.
We find that the trial court could have reasonably concluded that the costs claimed, subject to the aforementioned adjustments, were the direct result of Cheramie's negligence. Accordingly, Cheramie's assignment of error is without merit.

LIABILITY OF BLACK
We next consider Oceaneering's claim that the trial court erred in finding that the Time Charter's language precluded the M/V MISS SHELLY from its terms. Herein, the trial court found that "At the time which the time charter was consummated, on August 13, 1979, no specific vessel was mentioned." Finding that this silence led to ambiguity in the contract, the court looked to surrounding evidence to determine the parties' intent. The first item of evidence considered by the court was "the fact that the time charter refers to vessel in the singular tense which would lead the reader to believe it included only one vessel." In support thereof, the court found that "on the same day as the time charter, a letter from Oceaneering requests[ed] a 1200 hp tug and the MV MISS SHELLY was only a 600 hp tug." The court next noted that the Time Charter required Black to provide insurance verification to Oceaneering on vessels covered by the Time Charter. The trial court concluded that it was reasonable to believe that only vessels listed in the policy were included under the Time Charter.[6] It noted the M/V MISS SHELLY'S absence therefrom. Based thereon, the court found that the M/V MISS SHELLY was not included under the Time Charter's provisions and consequently Black was not liable for the damage caused. We find the trial court manifestly wrong both as a matter of law and fact.
*424 Contracts, subject to interpretation from the instrument's four corners without the necessity of extrensic evidence, are to be interpreted as a matter of law. Kemp v. Hudnall, 423 So.2d 1260 (La.App. 1st Cir. 1982); and Wilson v. Cost + Plus of Vivian, Inc., UDS, 375 So.2d 683 (La.App. 2nd Cir.1979). Only where a contract is ambiguous will we look beyond the contract's four corners. As such, the threshold issue is whether the Time Charter is ambiguous as a matter of law.
In the matter sub judice, the Time Charter's preamble states that certain services and materials as described in a "Purchase Order" would be provided and covered thereunder. The Time Charter notes that the parties sought a blanket time charter for the use of "the vessel." Its provisions also denote certain requirements that the vessel provided by Black would include (i.e., insurance, manpower, etc.). Moreover, several provisions of the Time Charter indicate that "each vessel" was to meet those certain requirements. Article 7 of the Time Charter specifically provides that the "Charter hire for each vessel shall be as agreed per day, or pro rata for part of a day, payable monthly." (Emphasis added).
We find the Time Charter's provisions to be clear and unambiguous. The contract was intended to cover any vessel requested by Oceaneering through a "Purchase Order." All singular tense provisions were clearly meant to specifically define the requirements of each vessel requested. As such, we find the trial court erred as a matter of law in interpreting the Time Charter.
Even assuming arguendo that the Time Charter was ambiguous and that we must then look to extrinsic evidence, we find the trial court manifestly wrong in its conclusions. Herein, the record shows that Black furnished Oceaneering the M/V MISS JANET and the M/V MISS BOBBY under these provisions when requested by Oceaneering. Each hiring was consummated by the submission of a "Purchase Order" from Oceaneering to Black. Further, Mr. Ridley J. Blanchard, President of Black, admitted that these two vessels were covered under the Time Charter by virtue of Oceaneering's "Purchase Order." It is thus clear to this court that the parties' intent herein was that the Time Charter contract was to include more than one vessel; indeed any vessel requested by a "Purchase Order."
In the instant matter, the record reflects that a "Purchase Order" was submitted by Oceaneering to Black for the M/V MISS SHELLY on October 30, 1979, six days prior to the accident. The record also reflects that Oceaneering paid Black for providing the M/V MISS SHELLY, just as it had done for the other two vessels. Indeed, it was not until demand was made upon Black to reimburse Oceaneering for its loss that Black claimed the M/V MISS SHELLY was not included under the Time Charter's provisions.
We find that the parties' actions as to the ordering, providing, and charging of the M/V MISS SHELLY were no different than with the M/V MISS JANET and M/V MISS BOBBY. Additionally, the record reflects no special agreement between Oceaneering and Black which would cause the M/V MISS SHELLY to be treated differently. Based hereon, we conclude that the trial court was manifestly wrong in finding the M/V MISS SHELLY excluded from under the Time Charter's provisions. As such, we reverse the trial court's finding that the M/V MISS SHELLY was excluded from the Time Charter's provisions.
For the above and foregoing reasons, judgment of the trial court is affirmed as to quantum and reversed as to Black's liability. Cheramie and Black are to equally share the costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] In such Time Charter contract, Black assumed limited liability for any torts committed as a result of its supplying services and materials to Oceaneering.
[2] Cheramie's insurers were Northeastern Fire Insurance Company of Pennsylvania, Southern American Insurance Company, and Arkwright-Boston Manufacturers Mutual Insurance Company.
[3] Black's insurers were Proprietors Insurance Company and Gulf Coast Marine, Inc.
[4] TKO's insurers were Northeastern Fire Insurance Company of Pennsylvania and Southern American Insurance Company.
[5] Those insurers dismissed were Southern American Insurance Company, Arkwright-Boston Manufacturers Mutual Insurance Company, and Proprietors Insurance Company.
[6] While the M/V MISS SHELLY is not specifically listed in the policy, Black's insurance afforded coverage for this vessel under Section B, Part II of said policy.