COLE, Justice.
The question presented is whether a maritime lease agreement between two of the parties in this litigation can encompass the negligent acts of a vessel, owned, manned and operated by a third party.
The agreement before us is titled a Time Charter Party. It was executed on August 13, 1979, between Oceaneering International, Inc. and Black Towing, Inc. Oceaneer-ing was engaged to construct a pipeline in the Gulf of Mexico for Transcontinental Gas Pipeline Company. Black Towing was to supply vessels for Oceaneering to use in *2 building the pipeline. Black owned a fleet of eight vessels, complete with its own crews and captains for each vessel. Black was also a broker of vessels it did not own.
After entering the Time Charter Party, Oceaneering requested two vessels. Black provided two of its own vessels and manned them with its captains and crews. Two months after entering the agreement, Oceaneering asked for a third vessel, and specified it wanted a shallow-water tugboat. Black did not have one of its owned and operated vessels which fit Oceaneer-ing’s specifications available at that time, and accordingly advised Oceaneering it could not fill the request from its own fleet. Oceaneering nevertheless requested Black obtain a tug. Representatives of Oceaneering testified the firm was aware that Black was both a broker for boats it did not own as well as a supplier of boats it owned and operated.
Black contacted Cheramie Towing Corporation which chartered and operated a shallow-water tugboat, the M/V MISS SHELLY, which fit Oceaneering’s specifications for the Transco work. Cheramie agreed to send the MISS SHELLY to the Transco construction site. There is no dispute that the MISS SHELLY worked under Ocea-neering’s directions, but with a captain and crew provided by Cheramie. At no time did the MISS SHELLY operate with a crew or captain provided by Black, nor did Black supervise the work performed by the MISS SHELLY.
On November 5, 1979, the MISS SHELLY was transporting Oceaneering’s divers in and around the work site when it struck an underwater pipeline owned by Transco. Oceaneering repaired the pipeline at its own expense. It then requested Black reimburse Oceaneering for the expense ($154,115.44) of the repairs. Black refused and this suit followed. Oceaneering sued Black, Cheramie Towing, and the insurers of both firms.
Oceaneering contends Black obtained the MISS SHELLY under the time charter contract and that the vessel was apparently chartered to Black. But Oceaneering admits the MISS SHELLY was not owned or operated by Black. The MISS SHELLY was owned by TKO, Inc., which demise chartered the vessel to Cheramie, which then manned the boat with its crew and captain.
The trial court dismissed Black from any liability to Oceaneering, and held Cheramie solely liable. Oceaneering in the trial court claimed Black was liable either in tort or contract. The trial court, in written reasons, found the evidence was clear that Black was merely a broker between Chera-mie and Oceaneering. When Black could not fill Oceaneering’s request for the particular vessel from its own fleet, Black arranged for the Cheramie-chartered vessel to report to Oceaneering. Cheramie’s employees manned the vessel and had full control of her. The trial court found Black did nothing to damage Oceaneering and could not be liable in tort.
Oceaneering contended the MISS SHELLY was included under the Time Charter Party signed by Oceaneering and Black. Among other considerations the trial court found the Time Charter Party required Black to furnish verification of insurance on its vessels to Oceaneering. The verification of insurance included only vessels owned by Black, and specifically named the two vessels supplied by Black initially. The MISS SHELLY was not mentioned in the verification of insurance. The MISS SHELLY was not named in or covered by the Time Charter Party. The trial court concluded Black was not liable in contract for the damage caused by the MISS SHELLY’s operation. Cheramie was ordered to pay Oceaneering the full cost of the repairs.
Both Oceaneering and Cheramie appealed. Cheramie assigned error to the trial court’s assessment of the damages. Ocea-neering said the trial court erred in finding the Time Charter Party with Black did not cover the MISS SHELLY, when Black had provided for the vessel to come to Ocea-neering’s job and had agreed in the charter to furnish vessels for the Transco work.
*3 The Court of Appeal affirmed the judgment as to quantum of damages but reversed the dismissal of Black Towing. Oceaneering International, Inc. v. Black Towing, Inc., et al., 479 So.2d 421 (La.App. 1st Cir.1985). In its review the court of appeal found the time charter’s provisions were clear and unambiguous, and intended to cover “any vessel” requested by Ocea-neering through a purchase order. The motor vessels MISS JANET, MISS BOBBY and MISS SHELLY were each provided by Black, the appeal court found, after a purchase order was received from Oceaneer-ing. It was determined the MISS SHELLY was merely the third vessel provided under the charter and was therefore fully covered by the agreement. The Court of Appeal noted also the payments to Black covered the hire of the MISS SHELLY.
We find that the parties’ actions as to the ordering, providing and charging of the M/V MISS SHELLY were no different than with the M/V MISS JANET AND M/V MISS BOBBY. Additionally, the record reflects no special agreement between Oceaneering and Black which would cause the M/V MISS SHELLY to be treated differently.
The appeal court found Black liable to Oceaneering under the Time Charter’s provisions, having found the trial court was manifestly wrong in finding the MISS SHELLY excluded from the Time Charter’s provisions.
This Court granted Black’s application for a writ of certiorari, on Black’s contention the Court of Appeal committed error in finding the charter agreement applied to the M/V MISS SHELLY.
This Time Charter Party was written by Oceaneering as a blanket agreement to cover all time charters with Black. It provides the agreement is made under the general maritime laws and shall be construed and enforced in accordance with the maritime laws. Oceaneering chose to call its contract a Time Charter Party.
The contract for the lease of a vessel is called a charter party in maritime law. Rojas v. Robin, 230 La. 1096, 90 So.2d 58 (1956). There are two types of charter party: (1) the time charter, also called a voyage charter, and (2) the demise charter, also called a bareboat charter. When the possession, control and management of the vessel remains in the shipowner, the charter is known as a time or voyage charter. When possession of the vessel is completely turned over to the charterer who mans and navigates the vessel during the rental period, this is called a demise charter. Admiralty Law of The Supreme Court, Baier, Third Edition, § 12-2. See also, Robinson Handbook of Admiralty Law in the United States (1939), p. 594. In the case before us, the MISS SHELLY was demise chartered by Cheramie from its owner TKO, Inc. and then manned and operated exclusively by Cheramie personnel. The MISS JANET and MISS BOBBY motor vessels were time chartered to Oceaneering by Black, the owner and operator. Black provided the vessels for Oceaneering’s use but maintained management and control by keeping its crew and captain on board.
The contract before us is unequivocally a time charter. All the provisions of the charter presume the vessels will be owned by Black; Black will insure the vessels, verify it has insurance on its vessels, and then man the vessels with its own personnel who will provide the services of the boat to the charterer while maintaining possession and management of the vessel. The charter clearly identifies Black as “Owner” in all references. That is, all the vessels which Black is to provide under the charter are to be owned by Black. Ocea-neering is clearly identified as the charterer. The only way to read the contract to make sense of its own definitions is to presume Black owns the vessels covered by the charter which are to be hired by Ocea-neering for the Transco pipeline job. There are no references to boats not owned by Black, or to boats simply chartered by Black, or to Black’s role as a broker of non-owned vessels.
A reading of the time charter’s other provisions reinforces the position that the only vessel or vessels contemplated by the *4 contract are those which Black owned and operated. The contract requires Black to provide the vessel’s captain and crew at its sole cost and expense. Cheramie provided the captain and crew for the MISS SHELLY. The charter required Black, the owner, to operate, navigate, victual and supply “each vessel.” The MISS SHELLY was not manned by Black or under Black’s control. The charter further required: “The entire operation, navigation, management, control, performance and use of the vessel shall be under the sole and exclusive command of, and be actually accomplished by Owner.” (Emphasis ours.) Sole command of the MISS SHELLY rested with the captain provided by Cheramie. These facts surrounding the ownership, operation and management of the MISS SHELLY are not in serious dispute.
Oceaneering maintains the MISS SHELLY was obtained by Black, and therefore it is covered by the time charter. Plaintiff-respondent characterizes the Cheramie vessel as a sub-charter to Black’s charter with Oceaneering. We read the contract before us as what it announces in plain language it is: a time charter. To repeat, a time charter contemplates the vessel’s owner leases the use of the boat but retains operation and management of the vessel by maintaining his crew and captain aboard. A time charter does not cover non-owned and non-operated vessels. The MISS SHELLY was neither owned, operated or manned by Black, therefore it does not fall within the Time Charter Party which Ocea-neering wrote and entered.
We find Black operated vis-a-vis the Cheramie vessel as a broker, obtaining this vessel to satisfy Oceaneering, but not to supply this vessel under the Time Charter Party. In Rojas v. Robin, supra, this Court found a brokerage arrangement on facts similar to this dispute.
Rojas’ boat disappeared while it was chartered to Eustis Engineering, Inc., which was doing foundation work for the Mississippi River Bridge at New Orleans. Robin owned a fleet of boats and chartered them; he also acted as a broker for other boat owners. Rojas owned his boat and listed her with Robin. When a boat was needed for Eustis’ job, Robin was called and he called Rojas, who accepted the assignment.
The arrangement was for Rojas to report to work and leave his boat on the work site on a 24-hour a day basis. Robin was to receive the payments for the boat rental, subtract his commission and pay Rojas. Eustis or his agents failed to keep a watchman on the job site and Rojas’ vessel disappeared on a night when Rojas was not on board.
The Court found Robin was not a charterer of the boat, but was a broker as to Rojas:
We do not think that Robin was the charterer of the boat in question. As Rojas himself admits, the boat was never delivered to Robin and was not in his care, custody or control and Rojas did not look to Robin for the return of his boat. Accordingly, in this transaction Robin was simply acting as a broker, and in our opinion the district judge erred in rendering judgment against him on plaintiff’s main demand. 90 So.2d, at 63.
In our present case, the Cheramie vessel was never delivered to Black Towing. It was at all times in the care, custody or control of its bareboat charterer, Cheramie. Black was simply a broker, a role which Oceaneering admits it knew Black sometimes filled. It is true the Cheramie vessel was ordered by respondent by purchase order, a transaction similar to the time charter. And it is true that Cheramie never billed Oceaneering directly. Instead, Black billed Oceaneering for the services of the MISS SHELLY, which Oceaneering then paid to Black, with Black deducting a commission and paying Cheramie. The arrangement is the same type of payment reviewed in Rojas. The Court of Appeal in this case said the ordering, providing and charging of the MISS SHELLY were no different than with the earlier two vessels which Black provided from its own fleet. We find the use of the purchase order, the charging and billing arrangements are not *5 evidence that this non-owned vessel can be covered by the time charter, which applied only to Oceaneering and Black Towing. The Rojas opinion similarly dismissed such matters as immaterial:
We do not think it material to whom the money was paid for the rental due on the vessel or for the services of the watchman, for in the final analysis Eustis Engineering Company paid these amounts, although the company was billed for both of these items by Robin.
Black billed Oceaneering for the MISS SHELLY at a price higher than it billed for its own vessels. The difference in prices was the brokerage fee charged by Black. The fact that Black received the payments for itself and Cheramie is not material to the issue of whether the time charter written by Oceaneering can be stretched to include a vessel not owned by Black Towing.
We find the M/V MISS SHELLY was in the undisputed control of Cheramie at the time the pipeline was damaged. Cheramie was the bareboat charterer and TKO was the owner of the vessel. The only role Black occupied was that of a broker. Black therefore was not liable for the damage caused by the MISS SHELLY. Rojas v. Robin, supra. See also Admiralty Law of the Supreme Court, supra, which addresses liabilities of ship owner, ship and charter to third persons, at § 12-12:
Under a demise charter, the charterer, insofar as third persons are concerned, is the owner. Thus, if as a result of the negligent navigation of a vessel under demise charter, a collision occurs, the demise charterer will be liable.... When the vessel is not under demise charter, but merely under an affreightment of voyage or time charter, the owner who is then in control will be liable for damages resulting from negligence in the operation and maintenance of the ship. The vessel, herself, will of course, be liable in rem.
We reverse the Court of Appeal’s finding that Black Towing Inc. was also liable to Oceaneering, and reinstate the trial court’s judgment for the reasons given above.
REVERSED.